# Richmond

MARY JANE RYDER PORTEWIG v. RICHARD R. RYDER.

April 22, 1968.

Record No. 6661.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Gordon and
Harrison, JJ.

*W. F. Hazen* (*Taylor, Hazen and Laster*, on brief), for appellant.

*John H. Thomas* (*Thomas, Jennings & Farley*, on brief), for appellee.

I'ANSON, J., delivered the opinion of the court.

Complainant, Mary Jane Ryder Portewig, is here on an appeal from a decree entered in the court below on August 31, 1966, holding that the custody of complainant's three children should remain with her former husband, Richard R. Ryder, the defendant.

The original proceedings between the parties resulted in the entry of a decree by the circuit court on June 26, 1961, granting the complainant an absolute divorce from the defendant on the ground of desertion and awarding her custody of their three children, namely, Richard, Jr., aged 7, Patricia, aged 5, and Susan, aged 12 months. The decree also approved and incorporated a separation agreement between the parties and further provided that future questions of custody, care and support of the children be referred to the appropriate juvenile and domestic relations court and that the cause be stricken from the docket.

Custody of the three children continued with complainant until April 19, 1962, when she became mentally ill and four days later was committed to Eastern State Hospital, Williamsburg, Virginia. Defendant took temporary custody of the children because of her illness. On November 15, 1962, the circuit court entered an order awarding defendant custody of the children.

Complainant was furloughed from the Eastern State Hospital on November 29, 1962, but received outpatient treatment at a consultation clinic in the city of Richmond until September 1963. The hospital records indicate that complainant was discharged as "restored" on September 20, 1963.

On April 22, 1965, complainant filed a petition in the court below alleging that she had completely recovered from her mental illness; that she had remarried and could provide a suitable and proper home for the children; that it was in the best interest of the children that they make their home with her; and that the court's order of November 15, 1962, awarding custody of the children to the defendant, was entered without any notice to her. She prayed that the court award her custody of the children and require the defendant to pay a reasonable sum for their support.

After an extensive ore tenus hearing on complainant's petition the court entered the decree now complained of, which provided that the custody of the children remain with the defendant and that complainant have reasonable rights of visitation.

The record shows that the proceedings resulting in the entry of the November 15, 1962, order were irregular, but we need not consider the questions raised because the petition filed by complainant

in April 1965 invoked the jurisdiction of the court and prayed that the court determine the question of custody of the children. Thus the crucial question on this appeal is complainant's contention that the chancellor erred in not granting her custody of the children.

[1] The children have been living with defendant since he assumed temporary custody in April 1962. Beginning in May 1963 defendant permitted the children to visit with their mother every week-end. This arrangement continued until July 1965 when visits were limited to every other Sunday. Since December 1965 complainant's visits with the children have been limited to one hour each month in defendant's home.

The defendant, an attorney, remarried shortly after the parties were divorced. He is 40 years of age and his present wife is 27 years of age. They have two children born of their marriage. The evidence shows that the family is well adjusted, and Mrs. Ryder's devotion to all the children is not questioned.

On June 29, 1964, complainant married Milton Portewig, an architect. She is 38 years of age and Portewig is 53. Their marriage is stable and they maintain an excellent home. Portewig is agreeable to the children living with him and his wife.

Complainant testified that since September 1963 she has not required any psychiatric treatment. She has held several responsible jobs and believes she is now capable of properly caring for the children. She admitted, however, that defendant's wife is a good mother; that the children are being well taken care of; and that the oldest child has told her he wants to live with his father.

Dr. George Kriegman, a psychiatrist, testifying on behalf of the complainant, said that he had interviewed complainant on five occasions and had administered psychological tests in order to determine her mental condition. At the time of her hospitalization in Eastern State Hospital she was suffering from a paranoid schizophrenic condition engendered by fear and hostility toward the defendant, her husband. It was his medical opinion that the complainant did not presently manifest any symptomatology of a paranoid reaction; that she had made an excellent marital adjustment; that she could carry out her duties as a mother; and that "her overall pattern indicates a stable, healthy pattern." Complainant had suffered a miscarriage after a seven-month pregnancy but she showed no excessive reaction to this loss.

The Eastern State Hospital medical reports noted that it is possible

that there could be a recurrence of complainant's condition but under present circumstances it was improbable.

Dr. William Michael Lordi, a psychiatrist specializing in child psychiatry, testifying for the defendant after having examined the complainant and the children, said that complainant showed some residual from her previous paranoid break and there were "still fundamental immaturities in her overall personality adjustment." He was of the opinion that she could not handle the additional stress of raising three active small children. Moreover, Dr. Lordi was of the opinion that if complainant was awarded custody of the children it would have a devastating effect on them because of their previous "wrenching back and forth" and would result in emotional maladjustments in each of the three children. Their loyalties, affections and adjustments are toward their natural father and his wife. He further said that defendant and his present wife appear to be adequate, healthy, interested and warm parents, and it was his medical opinion that Mrs. Ryder, because of her emotional outlook, could better care for the children than the complainant.

The findings of the chancellor based upon evidence heard ore tenus are presumed to be correct, and his decree will not be disturbed by us unless plainly wrong or without evidence to support it. *Moyer* v. *Moyer*, 206 Va. 899, 904, 147 S. E. 2d 148, 152 (1966); *Phillips* v. *Kiraly*, 200 Va. 345, 350, 105 S. E. 2d 855, 859 (1958); *Florance* v. *Florance*, 197 Va. 432, 435, 90 S. E. 2d 111, 113 (1955); *Oliver* v. *Oliver*, 193 Va. 571, 576, 69 S. E. 2d 350, 353 (1952).

The established rule in Virginia is that the welfare of the child is the primary, paramount and controlling consideration of the court in all controversies between parents over custody of their minor children. All other matters are secondary. *Campbell* v. *Campbell*, 203 Va. 61, 63, 122 S. E. 2d 658, 660 (1961); *Semmes* v. *Semmes*, 201 Va. 117, 123, 109 S. E. 2d 545, 549 (1959); *Mullen* v. *Mullen*, 188 Va. 259, 269, 49 S. E. 2d 349, 354 (1948).

It is true that the mother is the natural custodian of her child of tender years and that if she is a fit and proper person, other things being equal, she should be given the custody. *Campbell* v. *Campbell*, *supra*, 203 Va. at 63, 122 S. E. 2d at 661; *Mullen* v. *Mullen*, *supra*, 188 Va. at 270, 271, 49 S. E. 2d at 354. This rule, however, is a flexible one and it is not to be applied without regard to the surrounding circumstances.

In determining what is in the best interest of minor children whose custody is in issue between the parents we must look to and consider

the qualifications and fitness of the parents, their adaptability to the task of caring for the children, their ability to control and direct them, their ages, the ages, sex and health of the children, their temporal and moral well being, as well as the environment and circumstances of the proposed home and influences likely to be exerted upon the children. *Campbell* v. *Campbell, supra,* 203 Va. at 63, 122 S. E. 2d at 660; *Florance* v. *Florance, supra,* 197 Va. at 435, 90 S. E. 2d at 113.

The Ryder children were about 8, 6 and 2 years of age when defendant initially took custody in April of 1962 because of complainant's illness. The children had been in defendant's custody for three years at the time complainant's petition was filed and over four years when the circuit court decreed, on August 31, 1966, that the children remain with the defendant. During these years the children have formed affectionate ties with their natural father, his wife and their children. There exists a healthy and stable parent-child relationship in the Ryder home, and it is apparent that the children are receiving the love and affection of defendant and his family. Indeed, complainant concedes that the children are well cared for in their present surroundings and that they have a good home.

The evidence shows that a change of custody of the children would have a devastating effect on them and could result in their emotional maladjustment.

We are of opinion that the evidence supports the chancellor's decree that the welfare of the children will best be served by their remaining in the custody of the defendant.

[2] We agree with the chancellor that complainant should have reasonable rights of visitation with the children, but since the decree is not specific it should be amended to provide for the days and times of visitation, and complainant's rights should not be restricted to seeing the children in defendant's home.

The decree awarding custody of the children to the defendant is affirmed, and the cause is remanded with directions to the chancellor to amend the decree by setting out the specific rights of visitation.

[3] The costs of this appeal, including an attorney's fee of $500 to counsel for complainant for prosecuting the appeal in this court, are to be taxed against the defendant, Richard R. Ryder.

*Affirmed and remanded with directions.*