# Richmond

## FRANK FALCO v. WALLACE G. GRILLS, ET AL.

June 10, 1968.

Record No. 6711.

Present, All the Justices.

*Seymour Howard* (N.Y.) (*Jerome J. Dick; Howard Henig* (N.Y.), on brief), for appellant.

*Frank L. Summers, Jr.* (*James W. Mitchell* (Tenn.), on brief), for appellees.

HARRISON, J., delivered the opinion of the court.

This controversy in a child custody case raises questions involving the jurisdiction of the courts of Virginia and the applicability of the

Full Faith and Credit Clause of the United States Constitution. The appellant, Frank Falco, was awarded an appeal from a final decree entered in the court below whereby the custody of Carmella Arica Falco, an infant, was awarded to appellees, Wallace G. Grills and Barbara S. Grills, his wife.

Carmella Arica Falco is the sole survivor of an automobile accident that occurred in Staunton, Virginia, on July 14, 1966, and which resulted in the deaths of her parents, a brother, her maternal grandparents and a maternal uncle.

This child, then age nine, received serious injuries which necessitated her hospitalization in Staunton until August 29, 1966. Her surviving kin are Wallace G. Grills, of Kingsport, Tennessee, a maternal uncle, and seven paternal uncles and aunts, including Frank Falco, who reside in New York.

On July 20, 1966, Wallace G. and Barbara S. Grills petitioned the Juvenile and Domestic Relations Court of Staunton to award them the custody of Carmella, alleging that he had qualified as her guardian in the County Court of Sullivan County, Tennessee. The court entered a detention order reciting that the welfare of the infant required that her custody be immediately assumed by the court. Frank Falco filed his petition of intervention in the pending proceedings and alleged that on August 4, 1966, he had been appointed guardian of Carmella by the Surrogate's Court, County of Kings, in the Borough of Brooklyn, New York. The Juvenile and Domestic Relations Court found proper grounds existed for the filing of the petition by the Grills, and after a hearing entered an order on August 19, 1966, awarding the custody of the child to the Grills.

An appeal from this order was noted by Frank Falco to the Circuit Court of the City of Staunton. Various proceedings were had and investigations conducted, and the matter was heard by the trial court on October 6, 1966, at which hearing 15 witnesses were examined by the contesting parties. An exhaustive inquiry was made touching the suitability of the Grills and Falcos as proper persons to have the custody of their niece, and the religious, educational and recreational opportunities that each could afford the child. Carmella testified and manifested an intelligence and a maturity far beyond that normally expected of a child her age, and also an amazing sensitivity for the feelings of her competing relatives. She expressed a desire that the Grills be given her custody. Throughout all proceedings she was represented by an attorney who was appointed her

guardian *ad litem.* All other parties were represented by counsel.

The court below concluded that it had jurisdiction and that the interest and welfare of Carmella would be best served by awarding her custody to Wallace G. Grills and Barbara S. Grills, and so decreed on December 29, 1966.

There is no dispute that although Carmella was born in Kingsport, Tennessee, the daughter of Carmine J. Falco and Shirley G. Falco, her parents thereafter moved to New York and were residing and domiciled in that state in July, 1966. Carmella and the other occupants of the car were en route from New York to Kingsport to visit relatives when the accident occurred in Virginia. This poses one of the two questions involved in this appeal. Do the courts of Virginia have jurisdiction to fix the custody of an infant, a resident and domiciliary of the State of New York, who happens to be in Virginia temporarily through an unfortunate accident?

To make this determination we first look to the provisions of the statutes which relate to the jurisdiction, practice and procedure of Juvenile and Domestic Relations Courts, and specifically to Virginia Code § 16.1-158 (1960 Repl. Vol.) which concerns the jurisdiction of the courts. This section provides, in part, as follows:

"[E]ach juvenile and domestic relations court shall have, within the limits of the territory for which it is created, exclusive original jurisdiction, . . . over all cases, matters and proceedings involving:

"(1) The custody, support, control or disposition of a child:

"(a) whose parent or other person legally responsible for the care and support of such child is unable, or neglects or refuses when able so to do, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well being;

"(b) who is without proper parental care, custody or guardianship;

\* \* \*

"(e) whose custody or support is a subject of controversy . . . ;

\* \* \*

"(j) whose condition or situation is alleged to be such that his welfare demands adjudication as to his disposition, control and custody . . . ."

The venue of any proceeding under the aforesaid statute is in the

county or city where the child is present at the time the act com-
plained of is committed. Provided, however, in any proceeding in-
stituted by parents, guardians or anyone standing *in loco parentis*,
and involving the custody of any such child, the venue shall be
where the child is physically present at the time of the institution of
said proceeding, or, at the option of the petitioner, where the child
resided in any part of the year preceding the commencement of the
proceeding. Virginia Code § 16.1-160.

Counsel for appellant argues that because the child involved was
a resident and domiciliary of New York, the Virginia court had no
jurisdiction. He stresses the fact that her hospitalization in Virginia
was a mere happenstance, and that there was no intention on the
part of either the child or her parents to reside or stay in Virginia
for any period of time. Therefore, he says Code § 16.1-158 is not
applicable.

He further says that Code § 16.1-160, which relates to venue,
would be applicable only if the court had jurisdiction to entertain the
petition. He contends that absent jurisdiction there can be no ques-
tion of venue.

We have to view the case within the framework that existed in
Staunton in the weeks that followed the accident of July 14, 1966.
A nine-year-old child sustained two broken legs and other serious
injuries which required her to be a patient in the hospital there for
six weeks, and necessitated a long period of convalescence. This child
was not only orphaned by reason of the accident, but lost all persons
who normally would have been her natural guardians. Her nearest of
kin are uncles and aunts. The parents of the child were killed and
therefore "were unable to provide proper or necessary support, . . .
or medical, surgical or other care necessary for [her] well being".
For the same reason Carmella was then "without proper parental care,
custody or guardianship".

The controversy between the Grills and the Falcos for the custody
of Carmella had its inception immediately after the accident occurred.
Within a week the Tennessee uncle filed his petition in Virginia ask-
ing for the custody of the child. Approximately two weeks after the
accident, Mr. Falco, in an *ex parte* proceeding, was appointed her
guardian in New York, and intervened in the custody proceeding
brought by the Grills. Nothing could have been more apparent to the
authorities in Staunton than that the custody of Carmella Falco had
become the "subject of a controversy" between her Tennessee rela-

tives and her New York relatives. The court in Staunton concluded the situation warranted its immediate intervention and therefore took custody of the child.

The facts made a strong case for the court to assume jurisdiction. A decision had to be made prior to the release of the child from the hospital as to who should be entitled to her custody, and with whom she would leave the hospital when discharged as a patient. The child had no natural guardian to make this decision between competing uncles—and the authorities of the hospital had no right to make the decision.

Code § 16.1-158 further gives the court jurisdiction of a child "whose condition or situation is alleged to be such that his welfare demands adjudication as to his disposition, control and custody . . .". In this case the condition of Carmella, the situation in which she found herself, and the dilemma of the hospital authorities, was such that her welfare demanded an adjudication as to her disposition, control and custody.

At the time the Grills filed their petition for custody, Carmella was physically present in Staunton. The Grills, although not the natural guardians of the child, did stand in *loco parentis*. The statute requires physical presence of a child, and this requirement was met. Manifestly the General Assembly of Virginia, in enacting the statutes involved here, was concerned with the welfare of children within the borders of the state, and in the protection of those who were in need of protection. *Rogers* v. *Commonwealth*, 176 Va. 355, 11 S. E. 2d 584, involved the custody of infants and the question of jurisdiction. In the course of its opinion, this court held:

> "The local court of an infant's legal domicile has jurisdiction to determine its custody. *Wilson* v. *Wilson*, 136 Va. 643, 118 S. E. 270. However, jurisdiction of such courts is not exclusive. See *Sheehy* v. *Sheehy*, 88 N. H. 223, 186 A. 1, 107 A. L. R. 635; *Finlay* v. *Finlay*, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937; *Martin* v. *Gardiner*, 240 Mass. 350, 134 N. E. 380. In Virginia the actual presence of the infants within the jurisdiction of the court is sufficient to determine the venue of the action. Code, section 1907, expressly authorizes any local juvenile and domestic relations court to determine the custody of any 'neglected' child 'who resides in or who is actually within a city or county of this State.' " 176 Va. 355, 361, 11 S. E. 2d 584, 586, 587.

Section 1907 of the 1919 Code of Virginia has been amended and is now encompassed in Code of Virginia, Chapter 8, Title 16.1 known as Virginia's Juvenile and Domestic Relations Court Law, which includes the two sections under review.

Aside from jurisdiction expressly given by statute, Virginia has inherent power to decide questions involving the custody of infants.

The law of Virginia controlling the custody of children has been summarized in *Semmes* v. *Semmes*, 201 Va. 117, 123, 109 S. E. 2d 545, 549, as follows:

> " 'In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate.' (Citing cases.) *Mullen* v. *Mullen*, 188 Va. 259, 269, 270, 49 S. E. 2d 349." See also *Sutton* v. *Menges*, 186 Va. 805, 44 S. E. 414; *Forbes* v. *Haney*, 204 Va. 712, 133 S. E. 2d 533; *Lawson* v. *Lawson*, 198 Va. 403, 94 S. E. 2d 215, 14 Mich. Jur. *Parent and Child*, § 8.

There are decisions which hold that the domicile or residence of the child, or that of either parent, determines jurisdiction in the area of custody matters. However, a majority of the courts have not been too concerned with questions of technical domicile or legal residence, but with the welfare of an infant, if *physically present* within the jurisdictional bounds of the court. In these states, as in Virginia, all other matters are subordinated to the welfare of a child, and they give first, foremost and controlling consideration to such welfare in controversies involving custody.

*Wicks* v. *Cox*, 146 Texas 489, 208 S. W. 2d 876, 4 A. L. R. 2d 1, involved a child who was abandoned by her mother. Thereafter the mother of the child remarried, moved to Texas and removed the child from Virginia to Texas. An effort was made by a Virginia probation officer and the Virginia custodian of the child to obtain custody. The court found that Texas had jurisdiction since the child was present in the state. In its opinion the court said:

> ". . . So, whatever doubt may have once existed on the subject, the rule now is that technical legal domicile of the child in this state is not a *sine qua non* of child custody jurisdiction on the part of our courts.
>
> *       *       *
>
> "The principle underlying jurisdiction of the subject matter in

child custody cases is the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty, of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders, as well as the duty of such state to contribute toward the orderly administration of justice under our federal system by paying due heed to existing relationships on the part of the child or other persons concerned with other states, whether within or without the scope of the full faith and credit clause of the federal constitution. Ordinarly the courts of the domiciliary state are in a better position to pass intelligently on the matter of the child's welfare, and good order frequently requires that they do so to the exclusion of courts of other states in which the child is temporarily resident. But where the latter are in a more or less equally good position to determine the child's best interest, and their doing so appears to involve no particular prejudice to good order or social welfare, they have jurisdiction." 146 Texas 489, 492, 493, 208 S. W. 2d 876, 878, 4 A. L. R. 2d 1, 4, 5.

In *Finlay* v. *Finlay*, 240 N. Y. 429, 431, 148 N. E. 624, 625, 40 A. L. R. 937, 938, Judge Cardozo said:

"The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. [Cases cited.] For this, the residence of the child suffices, though the domicile be elsewhere."

In *People ex rel. Noonon* v. *Wingate*, 376 Ill. 244, 33 N. E. 2d 467, the contention was made that since the child, whose custody was involved, was domiciled in Massachusetts, that state alone had jurisdiction to determine custody. In disposing of this claim, the Illinois court said:

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the child. It arises out of the power that every sovereignty possesses as *parens patriae* to every child within its borders to determine its status and the custody that will best meet its needs and wants. . . . The residence within the State suffices even though the domicile may be in another jurisdiction." 376 Ill. 244, 250, 33 N. E. 2d 467, 470.

For similar rulings in other states, see cases cited in *In Re Fore*, 168 Ohio St. 363, 155 N. E. 2d 194.

*Bachman* v. *Mejias*, 1 N. Y. 2d 575, 136 N. E. 2d 866, was a habeas corpus proceeding involving the custody of a child. Questions of comity, and the Full Faith and Credit Clause of the Federal Constitution, were discussed. In the course of its opinion, the court pointed out that in a custody case the court acts as *parens patriae*, and further said:

> "It is the duty of the New York Supreme Court to determine the custody of minor children in this State and such determination is to be based solely on the welfare of the minors. The responsibility for the welfare of infants endows the court with the power to determine custody irrespective of the residence and domicile of the parents and prior custody orders in a foreign jurisdiction. [Citing cases.] It transcends the rule of comity. Comity is a matter of policy. [Citing case.] This rule of policy must yield when it conflicts with the dominant domestic duty of the court to guard the welfare of its wards. The individual rights of infants to invoke the protection of the State in which they reside cannot be ignored." 1 N. Y. 2d 575, 581, 136 N. E. 2d 866, 869.

We agree that the Juvenile and Domestic Relations Court of Staunton, originally, and the trial court, on appeal, had jurisdiction over the proceeding involving the custody of the infant Carmella Arica Falco, and conclude that the assignment of error which questions such jurisdiction is without merit.

We further observe that the conclusion we reach would be the same whether we apply the laws of Virginia, in which state the child was physically present when the custody proceedings were filed, or the laws of New York, which was the domicile of the child. New York Domestic Relations Law § 240 (McKinney 1964) concerns the "Custody and Maintenance of Children". This statute provides, in part, that:

> "In any action or proceeding brought . . . to obtain . . . by petition and order to show cause, the custody of or right to visitation with any child of a marriage, the court must give such direction, between the parties, for the custody, care, education and maintenance of any child of the parties, as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child."

From the language of the statute, and from numerous decisions of that state, it is obvious that in custody cases New York, as does Virginia, regards the welfare of the child as paramount and all other matters as subordinate. In a note at p. 366 following the above-quoted code section, it is said:

"But the custody aspect is a different matter; it requires no in personam jurisdiction of the other parent or quasi in rem substitute for it. The *child* is before the court (if within the state) and *its* presence is an adequate foundation for jurisdiction to affect its custody. It would be unkind to say that the child is a res upon which jurisdiction for custody purposes is founded, and the courts for that reason generally do not choose so to characterize their jurisdiction in these cases. But that is really the underlying theory. In any event, the only absence of jurisdiction that would be experienced in a custody matter would be the absence of the child. The absence of the other parent is immaterial. Money matters are in a different class, and require either in personam jurisdiction or property of the husband (or of the wife in the less frequent instance when it is she who has been directed to pay for her child's maintenance) within the state as a quasi in rem alternative."

██ The appellant further contends that assuming jurisdiction, the courts of Virginia should have recognized and given full faith and credit to a decree of the Surrogate's Court of the State of New York which granted him guardianship in an *ex parte* proceeding over the person and property of the infant Carmella.

The Constitution of the United States provides that full faith and credit shall be given in each state to the judicial proceedings of every other state. Virginia Code § 8-271 declares the policy of the state as to foreign decrees, and the records and judicial proceedings of the courts of the United States and its states, and provides that the same shall have such faith and credit given to them in Virginia as they have in the courts of the state from whence such records came.

It can be stated as a general proposition that the courts throughout this country have been most reluctant to apply full faith and credit to custody cases. The reasoning of the courts is expressed in *Commonwealth* v. *Gillard*, 203 Pa. Super. 95, 97, 198 A. 2d 377, 379, where it was said:

"As to the question of the decree of custody in California, the Pennsylvania Courts consider all orders fixing the custody of chil-

dren as temporary in nature. *Com. ex rel.* v. *Daven,* 298 Pa. 416, at page 419, 148 A. 524, at page 526 (1930), where the Supreme Court said: 'The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral, and spiritual well-being. To this the rights of parents and all other considerations are subordinate. Moreover, the controlling question is the welfare of the child at the time of the hearing before the court and not at some former time.' And what this Court said in *Irizarry Appeal,* 195 Pa. Super. 104, at page 108, 169 A. 2d 307, at page 309 (1961): 'So it appears that the law in Pennsylvania is clear that full faith and credit must be given to the decree of custody of a sister state so far as it determines the status of the child at the time it was issued, but, if the Pennsylvania Court has jurisdiction, it may, because of the interest of the Commonwealth in the child, and because the welfare of the child is a paramount consideration, and because decrees of custody are temporary in nature and subject to modification by changing conditions, determine custody on the present facts and may even exercise its independent judgment on the same facts that determined the foreign state's order.' [Citing cases.]"

In *Bachman* v. *Mejias, supra,* it was contended that New York should permit the Puerto Rico courts, as a matter of comity and reciprocity, to settle a custody issue. The New York Court of Appeals said: "We disagree. The full faith and credit clause does not apply to custody decrees. [Citing cases.]" 1 N. Y. 2d at 580, 136 N. E. 2d at 868.

In *May* v. *Anderson,* 345 U. S. 528, 535, 536, 73 S. Ct. 840, 844, 845, 97 L. Ed. 1221, 1228, Mr. Justice Frankfurter, in a concurring opinion, said:

". . . [T]he Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin. . . .

\* \* \*

". . . Interests of a State other than its duty towards children may also prevail over the interest of national unity that underlies the Full Faith and Credit Clause. But the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time."

In *Ford* v. *Ford*, 371 U. S. 187, 83 S. Ct. 273, 9 L. Ed. 2d 240, the court reversed an order of the South Carolina Supreme Court construing the Full Faith and Credit Clause of the Federal Constitution as requiring South Carolina, in the absence of a change of circumstances, to give full effect to a prior custody order of a Virginia court. Reference was made to the fact that the Virginia court held no hearings as to the custody of the children, and did not exercise its own judgment of what was best for them. The opinion comments on the laws of Virginia which require a court to put the child's interest first, and to subordinate all other matters, and further observed:

> "Whatever a Virginia court might do in a case where another court had exercised its considered judgment before awarding custody, we do not believe that, in view of Virginia's strong policy of safeguarding the welfare of the child, a court of that State would consider itself bound by a mere order of dismissal where, as here, the trial judge never even saw, much less passed upon, the parents' private agreement for custody and heard no testimony whatever upon which to base a judgment as to what would be best for the children.
>
> "We hold that the courts of South Carolina were not precluded by the Full Faith and Credit Clause from determining the best interest of these children and entering a decree accordingly." 371 U. S. 187, 194, 83 S. Ct. 273, 277.

In his opinion, Mr. Justice Black correctly anticipated the position of this court. There is nothing in the record before us to show on whose motion the letters of guardianship were granted appellant, what hearing was had, who was present, or what notice was given the parties in interest. We do know that neither Carmella nor the Grills were present, and that at the time the appointment was made the Juvenile and Domestic Relations Court of Staunton had assumed jurisdiction over Carmella and had entered its detention order.

What occurred in New York in this *ex parte* proceeding for the appointment of a guardian is in sharp contrast to the hearings that were conducted by the courts in Staunton involving the custody of the child. The record is replete with evidence that those factors which should be considered in determining the custody of a child were considered by the courts below, and every facet of the case was developed.

In *Hayes* v. *Strauss*, 151 Va. 136, 140, 141, 144 S. E. 432, 434, the

question was asked: "What are the rights of a guardian?" Responding, this court cited from *People* v. *Bolton*, 27 Colo. App. 39, 146 Pac. 489, and said:

> " 'We think the right of the guardian to the custody of his infant ward is subject to the same limitations, herein announced, as are the parents. Moreover, we do not regard the issuance of letters of guardianship, on an *ex parte* application, as an adjudication of the right to the custody of the ward that concludes the court in this case [a habeas corpus proceeding] from depriving the guardian of that custody in the interest of the welfare of the ward.' "

It suffices to say that at no time while this custody matter was under consideration by the Staunton courts was there in effect a judicial decree of a court of any other state determining the custody of this child. There was an *ex parte* appointment of a guardian, but no adjudication made by a court of competent jurisdiction that in its considered judgment it was in the best interest of the infant for her custody to be awarded to Mr. Falco.

Here it was the responsibility of the trial court to decide what the welfare of Carmella demanded. To do this it was necessary that it entertain the petition filed by the appellees, and to make a decision concerning the custody of the child. This judgment had to be based on facts and conditions as they existed at the time.

We observe that while this litigation has involved two uncles seeking the custody of a niece, the record shows that each is motivated by an unselfish desire to do what is in the best interest of the child and a willingness to give her a home and the proper supervision and care. Difficult questions of fact were presented for decision by the trial judge. No assignment of error questions the discretion he exercised.

The court was correct, under the circumstances of this case, in refusing to give full faith and credit, and to apply the principle of comity, to the decree of the New York Surrogate's Court. The following language, used by Mr. Justice Frankfurter in his dissent in *Kovacs* v. *Brewer*, 356 U. S. 604, 613, 614, 78 S. Ct. 963, 968, 969, is pertinent to our holding here:

> "In short, both the underlying purpose of the Full Faith and Credit Clause and the nature of the decrees militate strongly against a constitutionally enforced requirement of respect to foreign custody decrees. New York itself, the State for whose decree full faith and credit is here demanded, has rejected the applicability of

that requirement to custody decrees. [Citing cases.] And writers on the subject have observed a marked tendency among other state courts to arrive at this same conclusion, although often spelling out their judgments in traditional terms. [Citing authority.]

"This case vividly illustrates the evil of requiring one court, which may be peculiarly well-situated for making the delicate determination of what is in the child's best interests, to defer to a prior foreign decree, which may well be the result of a superficial or abstract judgment on what the child's welfare requires. In this case, the New York decree was rendered in a proceeding at which the child was not present—indeed, was not even within the State —by a judge who, so far as the record shows, had never seen her. Whatever force such a decree might have in New York, the Federal Constitution at all events does not require its blind acceptance elsewhere. The minimum nexus between court and child that must exist before the court's award of the child's custody should carry any authority is that the court should have been in a position adequately to inform itself regarding the needs and desires of the child, of what is in the child's best interests. And the very least that should be expected in order that the investigation be responsibly thorough and enlightening is that the child be physically within the jurisdiction of the court and so available as a source for arriving at Solomon's judgment. [Citing authority.] To dispense with this requirement is seriously to undermine the conscientious efforts that most state courts expend to carry out their functions in child custody cases in a responsible way."

We are of opinion that the determination of the trial court in this case is correct and should not be disturbed. The decree appealed from is therefore

*Affirmed.*