# Richmond

## John Carroll Addison v. Audrey Spence Addison.

June 16, 1969.

Record No. 6903.

Present, All the Justices.

*Robert E. Shepherd, Jr. (Robert P. Joyner; Smith, Norwood & Shepherd*, on brief), for appellant.

*Harry P. Anderson, Jr. (Satterfield, Haw, Anderson, Parkerson &*
*Beazley,* on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

Involved here is the custody of two infant children of the appellant, John Carroll Addison, and the appellee, Audrey Spence Addison. We granted the appellant an appeal from a decree of the lower court, entered October 9, 1967, awarding their custody to Mrs. Addison.

The history of the case is as follows: On December 28, 1965, appellee filed her bill of complaint in the Circuit Court of Henrico County praying that she be awarded a divorce from the appellant on the ground of desertion, the custody of their two infant children, and alimony and support money.

The appellant filed a motion to dismiss the bill, a plea in abatement, and his answer and cross-bill. He alleged that the parties had been legally divorced by final decree entered in the Court of Common Pleas of Colleton County, South Carolina on the 21st day of January, 1966, and that he had been granted custody of the children by this decree.

Various other pleadings were filed and proceedings had in the lower court, and in the Henrico Juvenile and Domestic Relations Court, which are unnecessary to detail here, for the parties, on March 31, 1967, stipulated and agreed that appellee waived her right to all issues alleged in her bill for divorce except the allegations relating to the custody of the two infant children. She waived her right to contest the legality and validity of the South Carolina divorce decree, excepting that part which related to the custody and support of the infant children.

The cause then pending was consolidated, for the purpose of trial and hearing, with an appeal, styled "Audrey Spence Addison v. John Carroll Addison", perfected by the appellant from an order of the Juvenile and Domestic Relations Court of the County of Henrico awarding custody of the children to the appellee and requiring the appellant to pay the sum of $30 per week for their support.

As a result of the stipulation of the parties, the bill of complaint filed by appellee was treated by the lower court as a suit for the custody and support of the children.

The assignments of error raise two principal questions: (1) Did

the lower court err in overruling appellant's motion to dismiss on the ground that the prior South Carolina decree was entitled to full faith and credit? and (2) Did the lower court err in awarding custody of the infant children to the appellee in the absence of any change of circumstances of the parties subsequent to the South Carolina decree?

Appellant also questions the action of the lower court in admitting into evidence certain testimony relative to the actions of the parties prior to the South Carolina decree of January 21, 1966.

The record shows that Mr. and Mrs. Addison were married in Walterboro, South Carolina on August 19, 1949 and cohabited there as husband and wife until August 7, 1964 when Mrs. Addison and her two children moved to Henrico County, Virginia where she has since resided. She testified that this action on her part was precipitated by the cruelty of her husband and her reasonable apprehension of bodily harm.

On April 27, 1965, Mr. Addison filed a complaint for a divorce *a mensa et thoro* in the Court of Common Pleas, Colleton County, South Carolina, alleging desertion by his wife. Mrs. Addison accepted service of process and filed her answer and counter-claim. The parties appeared at a hearing before a Referee in Colleton County, South Carolina on August 9, 1965. Following this hearing, Mr. Addison was awarded custody of the children for a period of twelve days during August, 1965, and later the court ordered weekend periods of visitation. Mrs. Addison made only the one appearance on August 9, 1965 in South Carolina in connection with this proceeding prior to filing her bill for divorce in the court below on December 28, 1965, and none thereafter.

On October 19, 1965, Mr. Addison filed an amended complaint in his pending suit in South Carolina asking for an absolute divorce and requesting custody of the children. No appearance was made by Mrs. Addison. Evidence was taken by appellant in Colleton County, before a Referee, of three witnesses, one being a private detective employed by appellant, who testified regarding certain allegedly improper actions on the part of the appellee in September, 1965, at which time she was living in an apartment in Richmond.

There is no evidence in the record before us of any investigation having been made in South Carolina touching the type of home and surroundings in which the children would be placed if awarded their father. Upon the Referee's recommendations, a final decree was en-

tered on January 21, 1966 by the resident judge of the Fourteenth Judicial Circuit Court of South Carolina, awarding Mr. Addison a divorce and giving him permanent custody of the two children.

This is, in brief, the background of appellant's contention that a final divorce decree entered by the South Carolina court is *res judicata*, is entitled to full faith and credit by this court, and that an order should have been entered by the court below affirming his right to the custody of the children.

"The Constitution of the United States provides that full faith and credit shall be given in each state to the judicial proceedings of every other state. Virginia Code § 8-271 declares the policy of the state as to foreign decrees, and the records and judicial proceedings of the courts of the United States and its states, and provides that the same shall have such faith and credit given to them in Virginia as they have in the courts of the state from whence such records came." *Falco* v. *Grills*, 209 Va. 115, 123, 161 S. E. 2d 713, 718, 719 (1968).

While it can be stated as a general proposition that the courts throughout this country have been most reluctant to apply full faith and credit to custody cases, this court has never held that it would not apply full faith and credit in such a case. We have stated repeatedly that the laws of Virginia require a court to put the child's interest first and to subordinate all other matters, and that the court should determine what, in its judgment, was in the best interest of the infant child. See *Portewig* v. *Ryder*, 208 Va. 791, 160 S. E. 2d 789 (1968); *Falco* v. *Grills, supra; Clark* v. *Clark*, 209 Va. 390, 164 S. E. 2d 685 (1968) and cases cited therein.

The parties have conceded that the South Carolina court had jurisdiction to enter the final decree divorcing the parties. The decree awards the custody of the children to their father. However, the children have been residents of, and living with their mother in, Virginia since August, 1964. During that time, with the exception of brief and intermittent visitations by the father, the children have been under the exclusive control of the mother.

Proceedings under the statutes of Virginia were brought by Mrs. Addison for legal custody and support of the children. It thereupon became the responsibility of the Virginia courts in deciding what was in the best interest of the infants to inquire into the status of the

mother and children, the home in which they resided, and the conditions under which they were living—this notwithstanding the validity of the decree of the South Carolina court.

In determining whether or not this presented a proper case for full faith and credit to be accorded the South Carolina decree, the lower court had to ascertain if there had been a change in conditions since the entry of that decree, and if such change justified the award of the custody to the mother, contra to the provisions of the South Carolina decree.

While the authorities are in conflict on the question as to the extra-territorial effect of a judgment awarding the custody of children upon a divorce of the parents, we are controlled here by the principle enunciated in the decision of this court in *Branham* v. *Raines*, 209 Va. 702, 707, 167 S. E. 2d 355, 359 (1969), where Mr. Chief Justice Eggleston, after reviewing a number of pertinent authorities, said:

> "It is not necessary that we decide in the present case whether we will follow the decisions of the Pennsylvania and New York courts and hold that the Full Faith and Credit Clause does not apply to custody decrees. We think there was a sufficient showing in the trial court that subsequent to the entry of the April 14, 1964 decree by the Ohio court there was a change of circumstances which warranted a change in the visitation rights granted to the petitioner father under the terms of that decree.
>
> \* \* \*
>
> " . . . Similarly, we think, it was within the power of the Virginia court, in the interests of the children's welfare, to modify the visitation rights of the father because of the change of circumstances. *Kovacs* v. *Brewer, supra,* 356 U. S. at 607, 608."

The record contains a statement by the judge of the lower court of the evidence heard by him on June 21, 1967, preliminary to the entry of the decree appealed from. A full hearing was held in which all parties, together with their counsel and witnesses, appeared.

Counsel for appellant stated at this hearing that his position was "more legal than factual—that the South Carolina decree bars this Court from hearing the custody question and, in the alternative, even if this Court can inquire into the facts it cannot look behind the South Carolina Decree *and can only grant custody to the plaintiff based on*

*a change of conditions since that decree was entered on January 21,
1966".* (emphasis supplied) Appellant thereby concedes that it is
within the province of the court to determine if there has been a
change of conditions.

We conclude that the evidence does show a change in con-
ditions since the children have been living in Virginia, and specifically,
since January, 1966.

We have here two children, James Rhode Addison, born July 12,
1953, who will soon be 16 years old, and Carol Patricia Addison, born
December 12, 1956, who will become 13 years old during the current
year. Manifestly we are no longer dealing with very young children,
but with teenagers whose wishes and attitudes should not be disre-
garded, and whose opinions are entitled to weight.

Both children, by agreement, were examined by the trial judge in
chambers and in the absence of their parents. Each stated that they
were happiest living in Virginia, and neither wanted to return to
South Carolina. James told the court that everything is better here
and he wants to be in the custody of his mother as he loves his mother
more. The children stated that Carol is scared of their father and does
not want to go back; that on his last trip to Virginia their father had
been drinking, and James was fearful that his father would take
him back to South Carolina. They expressed a fondness for their
grandmother, who lives with them, and their aunt, Mrs. Darrell
Napier, and her husband. Neither child desired to visit their father,
and further, the girl said that if she had to visit him she would prefer
to see him in Richmond as her father made her nervous.

Mrs. Agnes White, a probation officer with 16 years experience in
the Henrico Juvenile and Domestic Relations Court, visited Mrs.
Addison's home on appointment and on several occasions without
appointments. She observed it was neat, and that "conditions of
cleanliness prevailed". She found the physical setup satisfactory with
the children occupying separate bedrooms. She said their clothes
were adequate and clean and that both children expressed the desire
to remain with their mother. She saw nothing in the home to indicate
any improprieties or improper conduct on the part of the mother. It
was her recommendation that the children remain in the custody of
the mother with visitation rights to the father.

Mrs. Addison testified that she lived at 5207 West Grace Street in
Henrico County and had been back to South Carolina for only one
court hearing since she left there. Some of her testimony concerned

conditions that existed when she and appellant were living together, and upon which it is unnecessary to comment. She stated that when the children first arrived in Virginia they were extremely nervous and were under the care of a doctor, James having been counseled by the Family and Children Service; that at the time of the hearing on June 21, 1967, he was in excellent condition, had not missed a day from school and was in an accelerated section of his class; that Carol, who was a frightened child in 1964, had improved and is now maturing and more independent; that both children are doing well in school, are happy and less nervous. She described her home in Richmond as having four bedrooms, a dining room, living room, kitchen and two baths, and as occupied by herself, her mother and the two children.

The testimony of Mr. and Mrs. Darrell Napier largely concerned conditions that existed when the parties were living together in South Carolina. They testified that the children were very nervous when they arrived in Richmond in 1964, but had improved tremendously, both physically and emotionally, and are now happy and well-adjusted. Mr. Napier testified that he had been almost the sole support of the appellee and children when they first arrived in Richmond and that he owns the home in which they now live and sees them every day.

Mr. Addison works as a Soil Conservation Agent for the United States Department of Agriculture in Walterboro, South Carolina. His income is $7300 a year. He stated that he had an equity of $29,000 in land, and owns his own home, worth about $15,000. He admitted to being $500 in arrears in his support payments. (The court determined that the amount due by him was $1210.) Between August, 1964 and August, 1965, he sent money to the children, in the approximate amount of $450.

Mr. Addison wants custody of the children and says that his parents are living and that he has one brother and three sisters within fifty miles of his home. He lives alone and if awarded custody, he would place the children with a brother who has children about the age of his own.

No evidence was adduced before the lower court as to the conditions of the brother's home or other circumstances surrounding it. Appellant admitted that he drank beer occasionally, but denied drinking to the extent testified to by his wife and corroborated by Mrs. Napier. The private detective, who testified in South Carolina, did not testify in Virginia.

Following the hearing the court overruled the appellant's motion to dismiss and his plea in abatement, as narrowed by the stipulation of the parties. The custody of the children was given the appellee, with certain conditional rights of visitation to appellant.

The case comes to us after two full hearings, one in the Henrico Juvenile and Domestic Relations Court and the other in the Circuit Court of Henrico County. All parties in interest, as well as their counsel, have been heard. A thorough investigation has been made touching the condition of the children involved, and the circumstances under which they are presently living.

The lower court heard the evidence ore tenus and had the benefit of observing the parties, their demeanor and manner, and, in particular, the children whose custody is at stake. It has determined that under present conditions the welfare and best interests of the children will be promoted by permitting them to remain in the custody of their mother.

"The findings of the chancellor based upon evidence heard ore tenus are presumed to be correct, and his decree will not be disturbed by us unless plainly wrong or without evidence to support it. [Citing cases.]" *Portewig* v. *Ryder*, 208 Va. 791, 794, 160 S. E. 2d 789, 792 (1968).

Manifestly the evidence supports the conclusion of the trial judge, and a finding that there has been a change in the circumstances and conditions surrounding the two infants since the entry of the decree in South Carolina. Accordingly the decree of the lower court is

*Affirmed.*