## Richmond

CLAYTON J. HALL v. LOIS CAREY HALL.

April 27, 1970.

Record No. 7116.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Betty A. Thompson,* for appellant.

*John E. Kilcarr,* for appellee.

I'ANSON, J., delivered the opinion of the court.

This is an appeal by the plaintiff, Clayton J. Hall, from that part of a decree awarding the permanent custody of his three minor children to their mother, Lois Carey Hall (now Lois Carey Yenny), defendant.

On December 16, 1965, plaintiff filed suit in the court below against defendant, seeking a divorce on the ground of desertion and praying for permanent custody of their three minor children, namely: Tara Susan Hall (10 years of age), Rose Mary Hall (9 years of age), and Loleete Ann Hall (8 years of age). Defendant, a resident of Virginia City, Montana, was proceeded against by an order of publication.

On December 13, 1965, the defendant filed suit for a divorce in the Eighth Judicial District for Clark County, Nevada, and on January 13, 1966, the Nevada court granted her a divorce from the plaintiff but made no adjudication as to the custody of the three minor children.

Plaintiff's suit in the court below was referred to a commissioner in chancery, who reported that the Nevada decree was void for lack of jurisdiction, and the chancellor, on April 15, 1966, granted plaintiff a divorce *a mensa et thoro* and awarded him permanent custody of the children. The decree was later merged into a divorce *a vinculo matrimonii* with the same stipulation as to custody.

On September 1, 1967, defendant filed a petition in the court below, under the provisions of § 8-78, Code of 1950, 1957 Repl. Vol., for a rehearing of the cause in which the divorce decrees were awarded plaintiff. On April 22, 1968, defendant filed another petition in which she prayed that she be awarded the permanent custody of their children.

Both petitions for a rehearing were granted, and after an *ore tenus* hearing the chancellor gave full faith and credit to the Nevada decree, vacated and set aside his two former decrees, and awarded the permanent custody of the three minor children to the mother with certain visitation rights to the father.

The evidence before us on the custody question is in narrative form. It is as follows:

On June 14, 1965, defendant left her home in Fairfax County, Virginia, accompanied by her three minor children, for a vacation in Virginia City, Montana. Shortly thereafter she wrote the plaintiff that she was not returning to Virginia because she was tired of his belittling, bickering and physical abuse. Approximately a month later plaintiff received a letter from Alex Yenny, stating his intention to marry the defendant.

In August 1965, plaintiff went to Virginia City to effect a reconciliation with his wife. His efforts were unsuccessful and he returned to his home in Virginia. Approximately a month later he returned to Virginia City and brought the children back to his home.

Two days after the Nevada decree was entered, Yenny and the defendant were married in Las Vegas, Nevada. A son was born of this marriage. The Yennys live in Virginia City, a town with a population of 130 to 150 people. They reside in a rented house which is located one-half block from a school and fourteen miles from a hospital. They are presently planning to obtain a loan to

purchase a new home. Yenny is employed by Virginia City Trading Company at a salary of $500 per month.

The defendant is 34 years of age. She testified that she terminated her marriage to plaintiff because she was "just unhappy" living with him. She is now very happy with her present husband. While she was married to plaintiff she frequently suffered from migraine headaches, and was hospitalized for several months in 1957 in a mental institution. She is now in good health, both physically and mentally. She loves her children and wants them to live with her. She had not seen the children from early September 1965 until May 4, 1968. She made no attempt to see them because she did not believe plaintiff would permit it. Her last letter to the children was written in August 1967.

Plaintiff is a captain in the United States Air Force. He is 37 years of age and has been in the service for more than twenty years. He testified that he would soon be eligible for promotion to the rank of major, and that he had received orders for duty in the State of Hawaii. He stated that throughout his marriage to the defendant she consulted numerous psychiatrists and complained of being in poor health, but her physicians could not find anything physically wrong. It was necessary for him and their eldest daughter, Tara, to perform many of the household duties. Defendant did not keep the children clean. She had little control over them and would "screech" at them to get them to obey.

In January 1968 plaintiff married Barbara Keene, the mother of three children born of a former marriage. The children of her first marriage get along well with the Hall children. She is devoted to the Hall children and has taught them to cook and sew and to groom themselves properly. The children call their stepmother "mom" and have indicated in various ways that they are devoted to her.

A neighbor testified that the present Mrs. Hall is a devoted mother to all the children and is a good housekeeper. The six children are well adjusted; the family is a happy one; and they get along "famously" together. The defendant was a very nervous person. She did not keep her children clean, and she stated on many occasions that she did not like to keep house. Captain Hall is a "fine father." Another neighbor testified that the defendant "was often upset, nervous, dizzy and unhappy."

A psychiatrist interviewed the Hall children and their stepmother. He testified that it was his opinion that the children are now entirely normal emotionally and that it "would be a painful disruption

of the family life" if they were required to go to Virginia City to live with their mother and stepfather. The children expressed love for their mother but said they did not like Mr. Yenny. They said they wanted to continue to live with their father. The stepmother is patient and understanding and "capable of handling the family."

The children have excellent school records and they are active in their church.

The chancellor interviewed the children and each expressed a desire to live with her father.

In awarding custody of the children to the mother, the chancellor found that "there is no evidence of unfitness of the mother and that both parties are fit and proper to have the care and custody of the said minor children; and that the court is not persuaded that Virginia City is a detrimental environment; there may be more material amenities in Hawaii."

The chancellor suspended the execution of his decree pending an appeal to this court, and the children are now living in the State of Hawaii with their father and stepmother.

The plaintiff contends that the evidence does not support the chancellor's decree and is contrary to the welfare and best interests of the children.

In deciding the difficult question of custody of minor children whose parents are living separate and apart, it is important to keep in mind that the welfare of the children is the primary, paramount and controlling consideration. All other matters are secondary. *Portewig* v. *Ryder,* 208 Va. 791, 794, 160 S.E.2d 789, 792 (1968); *Mullen* v. *Mullen,* 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). Section 31-15, Code of 1950, 1959 Repl. Vol., provides that as between parents there shall be no presumption of law in favor of either parent. See also *Burton* v. *Russell,* 190 Va. 339, 345, 57 S.E.2d 95, 98 (1950).

We have many times said that in determining the question of the welfare of the children whose custody is in issue between the parents, consideration should be given to the fitness of each parent as to age, adaptability to the task of caring for the children, ability to control and direct them, and the ages, sex and health of the children, their temporal and moral well-being, as well as the environment and circumstances in the proposed home, and influences likely to be exerted upon the children. *Portewig* v. *Ryder, supra,* 208 Va. at 794-95, 160 S.E.2d at 792; *Florance* v. *Florance,* 197 Va. 432, 435, 90 S.E.2d 111, 113 (1955).

The wishes of the children, if they are of the age of discretion, should also be considered and given weight, although their wishes are not conclusive. *Forbes* v. *Haney*, 204 Va. 712, 715, 133 S.E.2d 533, 535 (1963); *Lawson* v. *Lawson*, 198 Va. 403, 410, 94 S.E.2d 215, 220 (1956).

We are not unmindful of the established rule that the chancellor's findings upon conflicting evidence on an *ore tenus* hearing are entitled to great weight and should not be disturbed unless plainly wrong or without evidence to support them. *Clark* v. *Clark*, 209 Va. 390, 395, 164 S.E.2d 685, 689 (1968); *Moyer* v. *Moyer*, 206 Va. 899, 904, 147 S.E.2d 148, 152 (1966).

In the instant case the evidence is without material conflict. The limited findings of the chancellor that both parties are fit and proper persons to have custody of the children, and that Virginia City is not a detrimental environment, indicate that all the elements necessary for determining the best interest of the children were not considered. Other evidence shows that the mother did not attempt to obtain custody of the children until they had been living with their father for nearly three years. She made no effort to see them until she went to Fairfax County to testify in this case and had not written to the children since August 1967. The father and stepmother are devoted to the children, and the children are apparently devoted to them. The children are well cared for and they get along well with the stepmother's children. They are all well adjusted and happy. At the time of the hearing on the custody petition in the court below, the children were 13, 12 and 11 years of age, and they told the chancellor they wanted to live with their father. While their desire to remain with their father was not controlling, it should have been carefully considered by the chancellor along with all the other evidence. The children expressed love for their mother, but their dislike of Mr. Yenny would make it unpleasant for them to live in his home.

It is manifest that the children will have numerous advantages living with their father that would not be available to them if they lived with their mother. To require them to go to Virginia City to live with their mother and stepfather after living with their father for more than four years "would be a painful disruption" to their lives.

We are unable to find in this record sufficient evidence to support the chancellor's decree awarding the custody of the children to the

defendant, and we are of opinion that the welfare of the children will best be served by awarding their custody to the plaintiff.

Accordingly, that part of the decree awarding the custody of the minor children to the defendant is reversed, and the cause is remanded to the court below with directions to the chancellor to enter a decree in conformity with this opinion and to provide reasonable and appropriate visitation rights to the defendant. Such decree shall be subject to the provisions of Code § 20-108.

*Reversed and remanded.*