## CIRCUIT COURT OF ALLEGHANY COUNTY

Mary Ellen Houchins Harmon

v.

Rodney Earl Harmon

May 20, 1975

By JUDGE ROSCOE B. STEPHENSON, JR.

I am called upon to decide primarily (1) which party, if either, is entitled to a divorce *a mensa et thoro*, and (2) which party should be awarded custody of the children born of the marriage.

The evidence respecting the divorce portrays a marriage which for a number of years was fraught with controversy, tension and conflict. Each party became withdrawn from the other, and at the time of their separation, they were simply living in the same house and barely tolerating each other. This being the situation, shortly before separating, the husband offered the wife two alternatives; (1) "I'll give you the car, put you in an apartment, I'll pay the rent on the apartment, and you can see the children anytime you please." or (2) the wife could remain in the home "just like a stick of furniture." There would be no more arguments, and each party would go their separate ways.

The husband felt that the first proposal offered the best solution, and a short while later, with relations between the parties no better, the wife decided to leave and accept that proposal. The separation ensued along the agreed plan until differences arose over the wife's visitations with the children. Because of this new contro-

versy involving visitations with her children, the wife instituted this suit.

I am of the opinion that neither party is entitled to a divorce under the facts of this case for two reasons. In the first place, the parties in effect agreed to the separation. Secondly, a divorce cannot be granted simply because the parties are unable to live together in peace and harmony. *Johnson v. Johnson*, 213 Va. 204, 211, 191 S.E.2d 206, 211 (1972); *Upchurch v. Upchurch*, 194 Va. 990, 1000, 76 S.E.2d 170, 176 (1953); *Butler v. Butler*, 145 Va. 85, 88, 133 S.E. 756, 777 (1926).

In *Butler*, the court said:

> The law does not permit courts to sever marriage bonds and to break up households merely because husband and wife, through unruly tempers, lack of patience, and uncongenial natures, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities and unwise selections, and the misconduct which will form a good ground for legal separation must be very serious, and such as amounts to extreme cruelty, entirely subversive of the family relations, rendering the association intolerable.

Here the parties, because of an unsatisfactory marriage, agreed to the separation, and therefore, the divorce sought by each is denied. The husband's duty to support and maintain his wife continues. However, the wife is presently employed, and if her income is sufficient for her needs, no allowance will be made for her support unless and until that need arises.

The custody issue is much more serious and complex. The real parties involved in this issue are the three children, Sandra Kay, born January 20, 1964, Dawn Teresa, born April 2, 1965, and Heather Louise, born November 22, 1969. It is their welfare that is uppermost in my mind.

Almost all child custody cases are difficult and filled with pathos. This one is no exception. The mother, apparently a lady of good moral character, appears, nevertheless, to be lacking to a marked degree in those qualifi-

cations so essential for a competent and successful parent. Years ago, she lost the affection, obedience and respect of Sandra. More recently, though perhaps to a lesser degree, the same situation has developed with respect to Dawn.

Without undertaking to go into detail, I find from a preponderance of the evidence (heard by me *ore tenus*) that the mother was, for the most part, very impatient with her children, that she was prone to scream and holler at them for the slightest cause, that she tended to take out her frustrations (particularly those caused by her unhappy marriage) on the children, and that she lacked the judgment, temperament, understanding, and consistency so essential in training, rearing, and disciplining young children.

The father, on the other hand, is virtually the antithesis of the mother where the children are concerned. He is endowed with an unusual ability to relate with his children. Although he is a rather strict disciplinarian, he is nevertheless fair, reasonable, and consistent. The children adore him.

The two older girls were permitted to testify and to give their views and feelings. Sandra is an exceptionally brilliant child. Her I.Q. is 135, and she makes excellent grades in school. Listening to and talking with her, I got the feeling I was hearing the thoughts and expressions of a mature, intelligent adult, rather than a child of eleven years. Dawn is also very bright. She has great insight and expressed her thoughts with clarity and sincerity.

Sandra told me that she had hated her mother for as long as she could remember. There is nothing about her mother that she admires, and she would be most happy if she never had any further contact with her mother.

Dawn's attitude toward her mother was essentially the same as Sandra's. She said that when she sees her mother, she becomes "sick in her stomach." She was most emphatic in her claim that her mother's screaming and hollering made her extremely nervous and unhappy.

Both of these girls said they dearly loved their father. They admire and respect him. They enjoy his companionship, and, while acknowledging that he was rather strict with them, they hastened to add that he was always fair and considerate.

I recognize the well established rule that the mother is the natural custodian of her child of tender years, and that if she is a fit and proper person, other things being equal, she should be given the custody. *Campbell v. Campbell*, 203 Va. 61, 122 S.E.2d 658 (1961); *Mullen v. Mullen*, 188 Va. 259, 49 S.E.2d 349 (1948). "This rule, however, is a flexible one, and it is not to be applied without regard to the surrounding circumstances." *Portewig v. Ryder*, 208 Va. 791, 794, 160, S.E.2d 789, 791 (1968).

In *Portewig*, the court further said that "[i]n determining what is in the best interest of minor children whose custody is in issue between the parents, we must look to and consider the qualifications and fitness of the parents, their adaptability to the task of caring for the children, their ability to control and direct them, their ages, the ages, sex, and health of the children, their temporal and moral well being, as well as the environment and circumstances of the proposed home and influences likely to be exerted upon the children." 208 Va., at p. 794, 160 S.E. 2d, at p. 79."

Where children have reached an age of discretion, as is the case of Sandra and Dawn, their wishes should be considered by the court and given weight, though they are not conclusive. *Hepler v. Hepler*, 195 Va. 611, 79 S.E.2d 651 (1954).

*Hepler* also holds that "[w]here it is reasonably possible, brothers and sisters of tender years should be reared together and have the full benefit of natural ties of affection and interest that such association develops." 195 Va., at page 623.

When I "look to and consider the qualifications and fitness of the parents, their adaptability to the task of caring for the children, their ability to control and direct them," I am constrained to hold that the mother, notwithstanding her generally preferred position in the law, is neither qualified nor suited to care for and direct these children, and that it is in the best interest and welfare of all three children that their custody be awarded to the father.

I direct that the mother have reasonable visitation privileges. I do not want the father or his mother to say or do anything which would cause or tend to cause these children to turn further away from their mother.

I want them, on the other hand, to do all within reason to mend and heal the breach that now exists between the two older children and their mother. While the chances appear quite slim at this time, it is perhaps possible that sometime later, if circumstances and conditions change sufficiently, the mother may be able to gain custody, or part custody, of these children. Certainly the law recognizes this possibility. Code § 20-107; *Andrews v. Geyer*, 200 Va. 107, 104 S.E.2d 747 (1958).