# Richmond

Cora Frances Moyer v. Clarence Matthew Moyer.

March 7, 1966.

Record No. 6114.

Present, All the Justices.

*S. Page Higginbotham* and *T. Stokeley Coleman (Higginbotham & Fry*, on brief), for the appellant.

*Roby G. Janney*, for the appellee.

Buchanan, J., delivered the opinion of the court.

This appeal is from a decree entered in the court below on November 27, 1964, changing the custody of the infant son of divorced parents from the mother to the father, from which the mother appeals.

Clarence Matthew Moyer, age 35, referred to herein as complainant or father, and Cora Frances Baldwin, age 22, herein referred to as defendant or mother, were married on June 19, 1957. One child, Aaron Matthew Moyer, was born of this union on March 25, 1958. On August 26, 1958, the complainant filed suit against defendant for divorce, alleging that she had deserted him on August 23, 1958. He prayed for a divorce *a mensa et thoro* and for custody of the child, then five months old.

On December 12, 1958, the court entered its decree granting the complainant a divorce *a mensa* from the defendant on the ground of desertion, awarded custody of the child to her and required the father to pay to her for the support of the child $60 each month until he should become of age, married or self-supporting, or until further order of the court, with the right to the father to visit him at reasonable times.

On April 2, 1959, the court entered a decree denying a motion of the father that the custody of the child be given to him, the court being of opinion that there was no sufficient showing of necessity for disturbing the custody.

On October 1, 1959, complainant filed his petition praying that the divorce be enlarged into a divorce from the bond of matrimony and "that the custody and support order heretofore entered may be continued," and on that day the court entered its decree granting complainant an absolute divorce and ordering that the custody of the child remain with its mother until he was twenty-one years old, or married, or became self-supporting, or until further order of the court; that the complainant pay to the defendant for the support of the child $60 on the first day of each month during such time, complainant to have the right to visit the child at reasonable times and under reasonable circumstances.

By decree of September 26, 1960, by consent of the parties, the visiting rights of the complainant were enlarged to include the taking of the infant by the defendant once a month on Sunday afternoon to visit the complainant and remain for not less than two hours.

On November 27, 1964, complainant filed a petition alleging that since the entry of the decree last mentioned the conditions surrounding the infant had materially changed and praying that the court enter a decree granting to the complainant the full custody and control of the child.

After hearing evidence *ore tenus* the court entered the decree ap-

pealed from awarding the custody of the child to the complainant, "with whom he shall reside except that the defendant shall have the custody of said infant from the 15th day of June to the 15th day of August of each year, during which time [complainant] shall pay unto the defendant the sum of $120.00 for the support of said infant."

At the conclusion of the evidence the chancellor stated that unquestionably there had been a showing of change of circumstances and conditions since the decree of September 1960, and that the changes that influenced him were: (1) that the defendant had failed to comply with the order that she deliver the child once a month to the complainant; (2) the failure of the defendant to get the child admitted to school; (3) that the child had reached the age of almost seven years; (4) that the defendant was the quilty party in the breaking of the marriage; (5) that one of the reasons for putting on the father the burden of keeping the child and being responsible for his maintenance is that he have enjoyment of the child's society and company.

It is important to keep in mind, in deciding the difficult question of the custody of a child of a broken home, that the court should concern itself primarily with the welfare of the child. It was stated in *Mullen* v. *Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354:

"In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate. * *"

The natural sequence of that principle is found in this further statement in the *Mullen* case:

"Even though the defendant has been found to be at fault in deserting her husband, her fault was not based on any moral delinquency. She has committed no fault against the child. The custody of the child is not to be ordered with a view of heaping punishment upon the defendant by reason of her responsibility for the severance of the marriage ties, where the substantial evidence shows that the mother is a fit person to share the custody." 188 Va. at 272, 49 S.E.2d at 355.

It does not appear that the failure of the defendant to take the child to the complainant's home as she had agreed to do represented a willful violation of the September 1960 decree. She testified that she took the child there until the complainant's father died and after that she did not think there was any need because his family could

visit the child in her home, and that complainant made no complaint about it until April 1964. Complainant testified that his father died on November 6, 1962, and after the defendant quit bringing the child over he wrote to her that he was coming over there to visit, and he continued visiting the child there once a month. If he was aggrieved in this matter he could, and doubtless would, have applied to the court for remedy.

In *Hersey* v. *Hersey*, 271 Mass. 545, 171 N.E. 815, custody of a child had been taken from the mother because she had removed the child from the State and had not allowed the father to see the child as directed by the trial court's order. In reversing, the court said:

"This is not a proceeding to discipline the respondent for her shortcomings. It is not a proceeding to reward the petitioner for any wrong which he may have suffered. It is a proceeding solely with reference to the custody of a little girl. The governing principle by which the court must be guided in deciding the issues raised is the welfare of the child. * *"

On the point that the defendant had failed to enter the child in a public school, the record shows that he had been pre-enrolled in an elementary school in Culpeper county and when that school opened in August 1964 the defendant took the child to the school and remained with him all day, over the objection of the principal. Next day the defendant's mother took the boy to school and also stayed there with him. He was not brought back to the school after that. He was then enrolled in an elementary school in Fauquier county, where he was to enter on September 28, but when his mother and grandmother took him there he held on to them and refused to go in. She did not force the boy to stay in school, she said, because he seemed to be scared to the degree that he was sick and vomiting. He had the fear that if they left him alone in the school someone would slip in and get him. In these circumstances she thought it was best for the boy, in order to get him settled down before putting him in public school, that she employ a private teacher for him, which was done. She testified that it was her intention to put the child in public school and that she was willing to obey any directive the court would make about it.

At the time of this occurrence the boy was six and one-half years old. If she was wrong in not requiring the child to stay in the public school, it was a mistake of judgment, issuing from the mother's desire not to cause him hurt.

At the time of the decree that the custody of the boy be changed, he was not yet seven years old. He was living with his mother in the home of her parents, the home in which he was living when by agreement his custody was given to the mother at the time the divorce *a mensa* was granted, and in which he was living when the complainant filed his petition for an absolute divorce and in it requested that the custody previously given to the mother be continued. The evidence shows this to be a good home, where the boy is well and happy. The grandparents are of middle age and well respected. The mother, now about thirty-one, is a high school graduate and of good health, character and habits. The boy's associations are good, he plays with other children, learns something of the work and machinery of the farm, and is developing normally.

The complainant himself testified at the hearing on November 27, 1964, that the boy is a normal child; that there is nothing wrong with him or with the home he is in; that he seems to be very intelligent and apt at learning; that he is a bright child. Complainant's contention is that the mother is not capable of rearing the boy because she allows him to be the boss in the family. He said he could handle the child better because "I am there at the home quite a bit of the time. I usually work in the cannery which is right across the road from my house and the child could be with me in my work quite a bit of the time. I am capable of teaching the child. I have had business training and I have had business experience and the mother has not had either." When the child was not with him, he said, he would be with complainant's sister, who was capable of taking care of him.

Complainant did not claim that the defendant was not a suitable person from a moral standpoint to have the child. His claim was that she was not capable of rearing him properly and having him properly educated; that the child ought not to be taught privately but should be put in public school and have contact with the public.

The home to which this boy would now be taken is occupied by his father, about forty-four years old, and his unmarried sister, who is about fifty-five. It is a comfortable home where the boy's physical needs would be cared for. Mr. Moyer is a hard-working, aggressive and successful business man. He believes in discipline and in work, and thinks the boy needs to experience both. Their value may be conceded, if the time and manner of their use are wisely chosen. But they are not all that is needed in the life of a child. The companionship and sense of security provided by a mother's love and care play

an important part in the proper development of a young boy. So we said in *Mullen* v. *Mullen, supra,* 188 Va. at 270-1, 49 S.E.2d at 354:

"It is now generally recognized that the mother is the natural custodian of her child of tender years, and that if she is a fit and proper person, other things being equal, she should be given the custody in order that the child may receive the attention, care, supervision, and kindly advice, which arise from a mother's love and devotion, for which no substitute has ever been found. Human experience supports the policy that young children should not be deprived of the care of their mothers and of their love and tenderness, which may be counted upon most unfailingly. Experience also teaches that children grow up more normally when reared by young people rather than older people." See also *Campbell* v. *Campbell,* 203 Va. 61, 122 S.E.2d 658.

We are mindful of the rule that the conclusion of the chancellor upon evidence heard *ore tenus* is entitled to great weight and should not be disturbed unless plainly wrong or without evidence to support it. *Florance* v. *Florance,* 197 Va. 432, 90 S.E.2d 111. But this is not a case of conflicting evidence resolved by the trial court in favor of one of the parties. Rather it involves a matter of opinion formed from evidence that is without conflict on the material questions. We are unable to find in the evidence sufficient support for the conclusion that there has been such change of circumstances and conditions as to warrant a change in the previous adjudications that the mother is the proper person to have the custody of this child.

We conclude that the trial court was in error in taking the custody from the mother and awarding it to the father as provided by the decree of November 27, 1964. That decree is accordingly reversed and the custody of the child is continued in the defendant, his mother, as provided by the decree of October 1, 1959, referred to above, except as follows.

The complainant shall have the custody of the child once each month from Friday afternoon through Sunday afternoon, and on each occasion the complainant shall get the child at the defendant's home on Friday afternoon and return him to the defendant's home on Sunday afternoon.

Complainant shall continue to pay defendant $60 each month for the support of the child, as provided by said decree of October 1, 1959.

As referred to above, the defendant testified that it was her in-

tention to put this child in a public school. She shall do this at the earliest practicable time, if not already done, or otherwise comply with the requirements of § 22-275.1 of the Code.

This case is remanded to the trial court with direction to enter a decree in conformity with this opinion and such decree shall then be subject to the provisions of § 20-108 of the Code.

The complainant shall pay the costs of suit in the trial court and in this court, and a fee of $250 to defendant's attorneys for services on this appeal.

*Reversed and remanded.*