## Staunton

### Blue Ridge Poultry and Egg Company, Incorporated v. Nellie Virginia Clark.

September 4, 1970.

Record No. 7137.

Present, All the Justices.

*J. Sloan Kuykendall (William B. Allen; Philip M. Grabill; Kuy-kendall and Whiting*, on brief), for appellant.

*Joseph W. White* (*Larrick and White*, on brief), for appellee.

I'ANSON, J., delivered the opinion of the court.

Nellie Virginia Clark, plaintiff, filed a bill of complaint in the court below alleging, *inter alia*, that the defendant, Blue Ridge Poultry and Egg Company, Incorporated, was collecting effluent from its poultry processing plant in an artificial lagoon and wrongfully discharging it into a ditch running across her farmland; that the effluent had an offensive odor, and solid organic substances were deposited on the bottom and sides of the ditch and on her nearby land; and that she had fallen and injured herself as a result of scum which accumulated from the discharge of the effluent. She prayed that the defendant be enjoined from discharging the effluent from its plant and lagoon into the ditch; and that she be awarded damages for depreciation in the value of her property, loss of rental income, and for personal injuries sustained.

Defendant filed an answer denying that plaintiff was entitled to the relief prayed for and asserting that it had a prescriptive right in the ditch running across her land. Defendant also filed pleas of laches and estoppel.

After an *ore tenus* hearing the chancellor inspected the *locus in quo*, and the plaintiff, at the suggestion of the chancellor, amended her bill to more specifically allege that the discharge of the effluent onto and over her land constituted a continuing trespass. After a further hearing, the chancellor, in a written opinion, held that plaintiff was entitled to injunctive relief; that plaintiff's father had granted defendant an oral license in 1958 to discharge the effluent into the ditch upon the condition that defendant would clean the ditch at intervals; that the license was not revoked until plaintiff instituted this suit, and that she was entitled to recover only for damages "sustained since the commencement of this suit." Accordingly, a decree was entered perpetually enjoining the defendant "from discharging any waters, fluids or other waste materials of any nature whatsoever in any manner so that the same will enter the complainant's property," and awarding a judgment for plaintiff against the defendant in the amount of $260.00, "that being at the rate of forty dollars ($40.00) per month from November 1, 1967," the date of institution of this suit.

Both parties say that the chancellor erred in holding that the defendant was granted an oral license to discharge the effluent into the ditch and that it was revoked upon the institution of this suit. In our view it is unnecessary to decide that question.

Although defendant has assigned numerous other errors, its controlling contentions may be summarized as follows: That the chancellor erred (1) in not holding that it had acquired a prescriptive right to discharge the effluent into the ditch; (2) in not sustaining its pleas of laches and estoppel; (3) in enjoining it from discharging any waters, fluids, or waste materials on plaintiff's land; and (4) in awarding plaintiff damages.

Plaintiff's assignment of cross-error related only to the refusal of the chancellor to award her damages sustained prior to the commencement of this suit because of his holding that an oral license was granted defendant by plaintiff's father and that it was not revoked by her until she filed this suit. The record shows that the cross-error was not filed with the clerk within fourteen days after defendant filed with the clerk its notice of appeal and assignments of error, and under our Rule 5:1, § 4, the assignment will not be considered.

Plaintiff owns a farm of approximately 65 acres in Shenandoah County which she acquired by intestate succession upon the death of her mother in June 1959 and upon the death of her father in July 1965. The farm is located approximately one mile from defendant's poultry processing plant on a substantially lower level.

A natural drainage ditch runs from defendant's land through two intervening tracts between the lands of plaintiff and defendant and across plaintiff's land to Stoney Creek, which borders on the lower end of plaintiff's property. For a great number of years, during heavy rainfall, surface waters flowed through the ditch and emptied into Stoney Creek. Other than at those times which occurred very rarely, the ditch on plaintiff's land remained dry.

Defendant's processing plant was started in a small way in 1944, and its operations have gradually expanded over the years. The plant represents an investment of $936,000. In 1967 it processed 56,000,000 pounds of poultry, employed about 250 people, and had a payroll of $941,000. The greater proportion of the processed fowl was raised locally.

The plant uses an enormous quantity of water, which it obtains from wells and other sources, to scald, clean, and cool the fowl in the

processing operations. During the year 1967 the plant used between 300 and 350 gallons of water per minute. The polluted water is carried off by pipe to a lagoon located just south of the plant where solid material is permitted to settle. The water and some solid matter is then discharged from the lagoon into the ditch running across plaintiff's land to Stoney Creek.

Prior to the year 1958 defendant's plant consumed only 100 to 150 gallons of water per minute, and the effluent discharged from the plant into the ditch was absorbed into the ground before it reached plaintiff's property line. However defendant then increased its consumption by some 200 gallons per minute, and during the spring of 1958 plaintiff's father noticed for the first time that the effluent, described as an "odorous * * * thick, bloody mess," was seeping onto his property through the ditch. He complained to the officers of the defendant, and the corporation had the ditch cleaned and limed. The effluent continued to accumulate, however, and in the late spring of 1959 it was necessary to clean out a culvert in the ditch, as cattle refused to cross over it to a connecting pasture field because of the odor. By 1960 the accumulation of effluent in the ditch had reached Stoney Creek. That fall, the condition not having improved, plaintiff's father made complaint to the State Water Control Board and other agencies. The Water Control Board found that the effluent was flowing through the ditch and polluting Stoney Creek. The defendant's officers agreed to take certain steps to correct the condition, but they did not cure the problem. After the death of her father in 1965, plaintiff made further attempts to deal with the problem by complaining to officers of the defendant and appearing before the Water Control Board and the County Board of Supervisors, and by requesting the aid of the regional Health Department and the United States Department of Agriculture.

A number of witnesses testified that the effluent from defendant's plant and lagoon looked like pure sewage, contained pieces of fowl, was infested with maggots, and was a breeding place for flies and mosquitoes. It formed a scum on the bottom and sides of the ditch and the adjoining land.

There was evidence that the land, which was rented as pastureland, ceased to be attractive for that use because cattle grazing on the land no longer did well, and the disagreeable condition of the ditch made it extremely difficult to rent the farmhouse on the prop-

erty. The fair rental value of the farmhouse dropped from $55.00 to $25.00 per month.

Defendant first argues that it had acquired a prescriptive right to discharge the effluent through the drainage ditch, since it had used it for that purpose for over twenty years. We do not agree.

■ To acquire an easement by prescription, use of the ditch must be open, continuous and adverse for a period of at least twenty years. *Causey* v. *Lanigan*, 208 Va. 587, 590, 159 S.E.2d 655, 658-59 (1968); *Craig* v. *Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 323 (1961). Here all the evidence shows that the effluent first reached the ditch on plaintiff's property during the summer of 1958, and the period required for acquiring an easement by prescription had not run when plaintiff instituted this suit.

■ Defendant's pleas of laches and estoppel are based on the assertion that plaintiff and her father acquiesced in the use of the ditch to discharge effluent from the plant. The chancellor properly rejected the pleas. The record is replete with instances of plaintiff and her father complaining of defendant's action in discharging the effluent into the ditch across their land.

■ Defendant says the chancellor should have denied the injunction under the doctrine of "balancing of equities" and left plaintiff's redress to an action for damages, if any, because the loss sustained by defendant and the farmers and laborers in the county would be far greater than the loss sustained by plaintiff.

Defendant places heavy reliance on *Akers* v. *Mathieson Alkali Works*, 151 Va. 1, 144 S.E. 492 (1928), in support of its position. There a basin into which Mathieson deposited waste known as muck and muck liquor "failed," and until another basin could be constructed it deposited the waste into two emergency natural basins. The waste ran through the bottom of the emergency basins onto the land of Akers and caused him great damage. Upon completion of the new basin, the emergency basins were no longer used, although at times a small amount of waste still flowed therefrom onto Akers' land. Akers sought a mandatory injunction to require Mathieson to remove the waste from the abandoned emergency basins because some muck was flowing from them. The injunction was denied, and in affirming the trial court we held that the waste flowing from the emergency basins was insignificant at the time Akers sought injunctive relief; that the evidence showed that the waste would eventually stop leaking; and that the enormous cost of removing the waste

from the emergency basins was far out of proportion to the benefit Akers would receive.

*Akers* is clearly distinguishable on the facts from the present case. At the time the injunction was denied Akers' injury from the leaking emergency basins was trivial and any further injury to him was uncertain. In the present case the injury to plaintiff is due to a present and continuing action on the part of the defendant.

The doctrine of "balancing of equities" must be viewed in light of our long-standing pronouncement that a private landowner is to be protected for injuries he may sustain "even though inflicted by forces which constitute factors in our material development and growth." *Townsend* v. *Norfolk Ry. Co.*, 105 Va. 22, 49, 52 S.E. 970, 979, 4 L.R.A. (N.S.) 87, 115 Am.St.Rep. 842, 8 Ann.Cas. 558 (1906). See also *Shoffner* v. *Sutherland*, 111 Va. 298, 301, 68 S.E. 996, 997 (1910); *Smith* v. *Pittston Co.*, 203 Va. 711, 717, 127 S.E.2d 79, 83 (1962).

The granting or refusing of any injunction is within the sound discretion of the chancellor, directed and guided by well-established principles. *Akers, supra*, 151 Va. at 8, 144 S.E. at 494.

In the present case the evidence was heard *ore tenus* and the chancellor inspected defendant's operations and plaintiff's land. Under settled principles, his findings are entitled to great weight and should not be disturbed unless plainly wrong. *Moyer* v. *Moyer*, 206 Va. 899, 904, 147 S.E.2d 148, 152 (1966).

The chancellor found as a fact that the defendant was wrongfully discharging effluent from its plant and lagoon, causing injury to plaintiff's land. The evidence supports the chancellor's finding.

Whatever right the defendant may have to natural drainage for the surface water from its land into the ditch is not in issue here. Clearly defendant did not have the right to collect large volumes of water from artificial sources, pollute it through its processing operations, and then discharge it upon plaintiff's land, thereby injuring it. *Panther Coal Co.* v. *Looney*, 185 Va. 758, 764, 40 S.E.2d 298, 301 (1946); *G. L. Webster Co.* v. *Steelman*, 172 Va. 342, 359-60, 1 S.E.2d 305, 311-13 (1939); 1 Minor on Real Property (2d Ed., Ribble) at 170, and the cases there cited. Hence the chancellor did not err in enjoining the defendant from discharging the effluent from its plant and lagoon into the ditch running across plaintiff's land.

Defendant says that there was no evidence upon which the chancellor could award plaintiff damages. We do not agree.

There was evidence that plaintiff was unable to rent the pastureland after September 1967 and that the monthly rental value of the farmhouse was reduced by $30.00 per month. The chancellor obviously based his award on a monthly loss to both the pastureland and the farmhouse, and we cannot say that there was no evidence to justify the amount awarded to plaintiff.

For the reasons stated, the decree is

*Affirmed.*