COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Huff and Senior Judge Clements

BRYAN B. BRITTAIN

                                                    MEMORANDUM OPINION
v.      Record No. 1944-10-4                              PER CURIAM
                                                    DECEMBER 20, 2011
APRIL J. BRITTAIN


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                            William T. Newman, Jr., Judge

              (Sandra L. Havrilak; Lindsay M. Jefferies; The Havrilak Law Firm,
              P.C., on brief), for appellant.

              (Matthew S. McConnell, on brief), for appellee.


       Bryan B. Brittain (father) appeals an order granting April J. Brittain's (mother) motion to

strike father's petition to modify custody.  Father argues that the trial court erred by (1) excluding

police reports from evidence when the reports were properly authenticated according to Code

§ 8.01-390; (2) refusing to permit the parties' thirteen-year-old daughter to testify about her custody

preference without making a finding that she was not of reasonable intelligence, understanding, age,

and experience to express a preference pursuant to Code § 20-124.3(8); and (3) concluding father

failed to meet his burden that a material change of circumstances occurred warranting modification

of the prior custody order and granting mother's motion to strike.  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  See Rule 5A:27.

_____

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The parties were married on July 7, 2001, separated on December 19, 2006, and divorced on March 25, 2008. The parties have three minor children.[1]

During their separation, the parties participated in a custody evaluation by Dr. Stanton Samenow, who prepared a detailed custody evaluation and two supplements in February 2008. The parties relied on his report and recommendations when they formulated their own custody agreement. On February 27, 2008, the parties signed the custody agreement, which was incorporated into an order on March 25, 2008. The parties agreed to joint legal and physical custody. The custody agreement provided that father would have final decision-making authority for school-related matters and mental health treatment. Mother would have final decision-making authority for non-mental-health-related medical decisions.

In July 2009, father filed a petition to modify custody and requested that he be awarded sole legal and physical custody of the children, or at least, final decision-making authority on all matters relating to the children. Father also requested a modification to the visitation schedule and certain injunctions against mother, including that she be enjoined from harassing him, trespassing on his property, and interfering with his telephone contact with the children.

In preparation for trial, father issued a witness subpoena for his oldest daughter to testify. Mother filed a motion *in limine* and asked the trial court to quash the subpoena, which the trial court granted. Father filed a motion to reconsider, which the trial court denied. Father filed a motion and requested that the trial court speak with the child in chambers, and the trial court denied the request.

The trial court heard evidence for three days. At the conclusion of father's case, mother moved to strike, arguing that father failed to establish a material change of circumstances since

_____

[1] The parties' two oldest children were born prior to the parties' date of marriage.

the last court order.  The trial court agreed and granted the motion to strike.  The final order was entered on August 16, 2010, and this appeal followed.

ANALYSIS

Police reports

Father argues that the trial court erred by not admitting into evidence two police reports from when mother called the police to her house to assist with the parties' oldest child.  Father contends the reports should have been admitted because they were properly authenticated under Code § 8.01-390.[2]

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'"  Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

In offering the police reports to the trial court, father stated, "In the police reports, you have two independent police reports where she [mother] has called the police on [N.] because she can't control her behavior, and her remedy is to go to the cops."[3]

The trial court refused to admit the police reports because Code § 8.01-390 did not specifically include police reports, and "[p]olice reports are not generally admitted."  We need

---

[2]      Copies of records of this Commonwealth, of another state, of the United States, of another country, or of any political subdivision or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies either by the custodian thereof or by the person to whom the custodian reports, if they are different.

Code § 8.01-390(A).

[3] We will refer to the minor children by their initials.

not address the issue of whether Code § 8.01-390 includes police reports because mother testified about the incidents when she called the police. Father's counsel asked mother about the incidents and why she called the police. Since mother fully testified about the events, the admissibility of the police reports is moot. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (holding that "mootness has two aspects: 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'" (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969))).

Accordingly, even if the exclusion of police records were error, such would be harmless in the context of this case.

### Child's testimony

Father argues that the trial court erred by refusing to permit the parties' oldest child to testify about her preference for where she wanted to live.

Father did not proffer what the child's testimony would be. He simply told the trial court, "[S]he is a fact witness. She is a witness who has knowledge not only with regard to her preference that Ms. – Ms. Brittain is fully aware of, but she is a witness as to what is going on between the two households." Father did not elaborate as to what the child's testimony would be.

> In Virginia, when "testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error – much less reversible error – without 'a proper showing of what that testimony would have been.'" Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation omitted); see also Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 348, 650 S.E.2d 92, 96 (2007).

\* \* \* \* \* \* \*

> Absent a proffer showing "harm was done," we are "forbidden to consider the question." Scott v. Commonwealth, 191 Va. 73, 78-79, 60 S.E.2d 14, 16 (1950)). . . . "To be sure, even when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error." Tynes, 49 Va. App. at 22, 635 S.E.2d at 690 (quoting Smith v. Hylton, 14 Va. App. 354, 358, 416 S.E.2d 712, 715 (1992)).

Ray v. Commonwealth, 55 Va. App. 647, 649-50, 688 S.E.2d 879, 880-81 (2010).

Typically, without knowing what the child was going to say, we could not review the trial court's decision in refusing to allow her to testify. In this case, however, the trial court noted that the import of such testimony would have been that N.'s preference was for her father and therefore no further proffer was necessary. Father argues that the trial court should have made a decision regarding the child's reasonable intelligence, understanding, age, and experience pursuant to Code § 20-124.3(8) before determining that she was unable to testify. The trial court refused to allow her to testify because the parties' custody agreement, which was incorporated into a court order, stated, "Nor shall either Party discuss legal issues surrounding custody with the children." The trial court stated, "What does concern me is the allegation here that there has been a violation of the Court Order." There was evidence that father discussed the legal proceedings with the children, especially with the oldest child. He also brought the child to his attorney's office, where she talked with counsel for approximately two hours in preparation for the custody hearing.

Despite the exclusion of the daughter's testimony, the trial court stated in its final ruling, "The Court is aware, or by intimation even if not by testimony, that at least [N.] may have a preference about which way she wants to go." Even though the trial court did not hear from N., there was sufficient evidence from which the trial court could infer N.'s preference.

Accordingly, we affirm the trial court's ruling to exclude the thirteen-year-old child from testifying.

<u>Motion to strike</u>

Father argues that the trial court erred in granting mother's motion to strike. Father presented evidence and various witnesses over the course of three days in support of his petition to modify custody. At the conclusion of father's case, mother moved to strike on the ground that father had not proved that there had been a material change in circumstances since the last court order. The trial court agreed and granted the motion to strike.

On appeal, the Court in reviewing the ruling to strike a plaintiff's evidence "must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff." <u>Economopoulos v. Kolaitis</u>, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (citing <u>West v. Critzer</u>, 238 Va. 356, 357, 383 S.E.2d 726, 727 (1989)).

So viewed, we acknowledge that "the parent seeking to obtain a transfer of custody bears the burden to show a change in circumstances following the most recent custody award." <u>Hughes v. Gentry</u>, 18 Va. App. 318, 322, 443 S.E.2d 448, 451 (1994) (citations omitted).

"The test [for modifying custody] . . . has two prongs: first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." <u>Keel v. Keel</u>, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983). "Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." <u>Visikides v. Derr</u>, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (citing <u>Moyer v. Moyer</u>, 206 Va. 899, 904, 147 S.E.2d 148, 152 (1966)).

In this case, father presented evidence from numerous witnesses, including the oldest child's therapist and the youngest child's therapist. Contrary to father's arguments, both therapists testified that the children were doing well. Father testified that he had difficulty communicating with mother. The parties could not agree on the youngest child's ADHD

medication, nor could they agree on the children's extracurricular activities. However, the issue regarding the medication resolved itself, and the oldest child was able to continue with music lessons. Father also emphasized that mother failed to follow the counseling recommendations from the original custody agreement. The trial court noted that mother did not immediately follow the recommendations for individual counseling, but by the time of the hearing, mother had seen a counselor. The trial court stated that mother "appears to be functioning better now than she was when this report was done by Dr. Samenow." Father showed the differences between his home and mother's home, and argued that he was better able to provide consistency for the children. Father emphasized mother's relationship with their oldest child. He argues that mother was "incapable of effectively parenting" their child. He points to the two incidents when she called the police for assistance. The trial court addresses the relationship between the mother and the oldest child as follows:

> Looking at the relationship between the parents and the children, it appears that notwithstanding the fact that [N.] and her mother have been having some issues, some of that the Court is kind of in a quandary because you don't know how much of it is because she's becoming a teenager – and that's a thing in and of itself that, you know, is hard to gauge, you know, for any child in how they are going to act and respond; how much of it is because there are some really legitimate issues between she and her mom; and then how much of it could have been the result of the fact this past year that she was aware of this pending court case.

Father argued that all of these instances, as well as the fact that the children are older and that the parties have moved, showed a material change in circumstances.

The trial court disagreed and referred to Dr. Samenow's report. In 2008, Dr. Samenow prepared a thirty-six-page report and two supplements, which the parties relied on when drafting their custody agreement. Dr. Samenow's reports were presented to the trial court for its review prior to issuing its ruling in this case. The trial court noted that the report emphasized how different the parties were, and "[i]t was clear from reading the report that there were a lot of

issues that existed between you." In fact, the trial court found, "much of what is going on here and the problems that exist are problems that, as clear from Dr. Samenow's report, problems that probably existed from the time you all ever got together and they're still there." The trial court stated that "there's no question in my mind there are some things that have kind of fallen and are not as perfect as they should be." However, the trial court stated, "you have to realize certain things are in the best interests of the children, notwithstanding your differences and the fact that you all have your differences, and obviously which led to the divorce." The trial court admonished father to be more flexible and mother to "step up and make sure she is doing more, as much as she possibly can, to follow the letter of the court order." The trial court examined in depth the factors of Code § 20-124.3 and found that "for the most part the needs of these children are being ably met by both parents."

In reviewing the record in the light most favorable to father, we find that there is credible evidence to support the trial court's ruling that father did not prove that there was a material change in circumstances. Accordingly, the trial court did not err in granting the motion to strike.

<u>Attorney's fees and costs</u>

Mother seeks an award of the attorney's fees and costs she incurred on appeal. However, because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," <u>Estate of Hackler v. Hackler</u>, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny her request for an award of attorney's fees and costs she incurred on appeal. <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>