# Richmond

SHARON LYNN BURNSIDE v. WILLIAM MALDEN BURNSIDE.

March 5, 1976.

Record No. 750358.

Present, All the Justices.

*Wm. H. Ledbetter, Jr. (Whitticar, Sokol & Ledbetter,* on brief), for appellant.

*(W. H. C. Venable; Cohen, Abeloff & Staples,* on brief), for appellee.

Case submitted on brief for appellee.

HARRISON, J., delivered the opinion of the court.

This is a controversy over the custody of Christopher William Burnside, son of William Malden Burnside and Sharon Lynn Burnside. A final decree was entered by the court below granting the husband an absolute divorce from the wife and awarding him custody of their son. This appeal was noted by the wife.

No worthwhile purpose would be served by a detailed review of the testimony taken in this case. The parties were married in 1963, and Christopher, their only child, was born May 31, 1967. They were

residents of the City of Fredericksburg for a number of years, and Mr. Burnside, who remarried on August 21, 1975, still resides there. Mrs. Burnside has also remarried and is now a resident of Arizona. Both parties hold graduate degrees. Mrs. Burnside was employed by the Fredericksburg public school system. Mr. Burnside is Regional Director for the Virginia Department of Vocational Rehabilitation.

While there is some evidence of bizarre behavior by the parties during the time their marriage was disintegrating, neither has been shown to be an "unfit" person.

Mrs. Burnside cites cases in which the court has held that in the usual course the welfare of a young child will be best promoted by awarding custody to the mother, if she is a fit person and if other things are equal. She refers to *Moore* v. *Moore*, 212 Va. 153, 183 S. E. 2d 172 (1971), where the mother of two daughters, ages eleven and seven, prevailed; to *Lundeen* v. *Struminger*, 209 Va. 548, 165 S. E. 2d 285 (1969), which involved two boys, five and seven years old, whose custody was awarded the mother; to *Campbell* v. *Campbell*, 203 Va. 61, 122 S. E. 2d 658 (1961), where we awarded the mother custody of the two children of the marriage—a boy age five and a girl age two; and to *Brooks* v. *Brooks*, 200 Va. 530, 106 S. E. 2d 611 (1959), where custody of a six-year-old boy was awarded the mother.

Mr. Burnside responds by citing Code § 31-15, which provides that a court, in awarding custody of a child, shall give primary consideration to the welfare of the child and "as between the parents there shall be no presumption of law in favor of either". Appellee concedes that in a number of cases this Court, in dealing with children of tender years, has said that the mother is the natural guardian, and if she is a fit and proper person, other things being equal, she should be given the custody. However, in *Portewig* v. *Ryder*, 208 Va. 791, 794, 160 S. E. 2d 789, 792 (1968), we said: "This rule, however, is a flexible one and it is not to be applied without regard to the surrounding circumstances." In *Portewig* the husband was awarded custody of the three children, ages six, ten and twelve. The facts in *White* v. *White*, 215 Va. 765, 213 S. E. 2d 766 (1975), are strikingly similar to the facts in the instant case, and the reasoning of the court there could well be applied here. There the custody of a six-year-old son was awarded the father. In *Clark* v. *Clark*, 209 Va. 390, 164 S. E. 2d 685 (1968), the custody of a four-year-old boy was awarded the father.

As we have repeatedly said in determining custody, we are concerned first and foremost with what is best for the child. Always, the

primary and controlling consideration is the child's welfare. All other matters are secondary.

The evidence in this case is most voluminous, and much of it concerning the custody of the child was taken *ore tenus*. The trial court kept the case under advisement for several months following argument "in an effort to determine what would be in this seven-year-old child's best interest regarding his custody". In a comprehensive memorandum opinion it made certain findings of fact. It found no evidence to support the wife's allegation that her husband suffered from any mental or emotional problem. The court said: "His emotional trauma resulting from learning of his wife's infidelity and abandonment of the home were quite enough to cause his temporary emotional outbursts."

The court noted that Dr. Hertha Reise, a child psychiatrist, had observed and attended Christopher for a period in excess of eighteen months, had made numerous tests to determine which home would be best suited for him, and had concluded, without equivocation, "that the child's welfare and emotional development require his continued residence with his father".

The court found that the mother "perhaps unconsciously, wants the child more to satisfy her own emotional needs than that the child be reared in a stable and happy environment. She obviously loves her child but in an immature way". Furthermore, it found that Mrs. Burnside "requires a great deal more maturing and developing before, in the Court's opinion, she would be an emotionally fit and proper person to have the custody of the child".

After reviewing the evidence in great detail, the court concluded:

"One thing is certain, the child, in his father's custody, continues to reside in a wholesome, happy, natural atmosphere in a semi-rural setting, enjoying his play and recreational activities with his friends his own age, hunting, camping and fishing with his father, secure in the knowledge that his life is stable and secure.

"Without here reciting the testimony of all witnesses, suffice it to say that the weight of the testimony as to the Court's duty of considering only the welfare of the child, there can be no doubt that at this point in his life he would be far better off with his father. . . . [L]et it be said that all things are not equal in this case. . . . Even though the mother . . . might not be unfit, the child's welfare must not be adversely affected for the sake of a mechanical

rule, which blindly accepted would require the award of his custody to his mother. . . . [U]nrebutted medical evidence points unequivocally toward the child's best interests being served by his remaining with his father. . . .

\* \* \* \* \*

"There is ample evidence that the Burnside child would suffer emotional maladjustment if he is arbitrarily now wrenched from his father and given to his mother. . . ."

In *Portewig* v. *Ryder, supra,* we said: "The findings of the chancellor based upon evidence heard ore tenus are presumed to be correct, and his decree will not be disturbed by us unless plainly wrong or without evidence to support it." 208 Va. at 794, 160 S. E. 2d at 792.

Christopher has spent his whole life either with his father or in close proximity to him. The father has had sole custody for the past two and one-half years. We agree that a change of custody at this time would not be in the boy's best interest, nor would it serve his welfare. Such a change most likely would result in the child's removal to a distant state, away from the area in which he has lived all his life, and the father, friends and family with whom he identifies.

The decree of the chancellor is supported by the evidence, and it therefore is

*Affirmed.*

CARRICO, J., dissenting.

I dissented in *White* v. *White*, 215 Va. 765, 213 S.E.2d 766 (1975), which the majority says is "strikingly similar" to this case and upon which it predicates its present holding. My concern in *White* was that the majority, without saying so, had abandoned the rule recognized in *Mullen* v. *Mullen*, 188 Va. 259, 270, 49 S.E.2d 349, 354 (1948), that the mother is the *natural* custodian of her child of tender years. The present holding is yet another departure from *Mullen*, and I cannot subscribe to the further erosion of its salutary rule.

I'ANSON, C.J., joins in this dissent.