## Richmond

### CHARLES MICHAEL HARPER V. GAIL SPENCER HARPER, ETC.

November 24, 1976.

Record No. 751229.

Present, All the Justices.

*David E. Sher (Joanne F. Alper; Leonard, Cohen & Gettings, on brief), for appellant.*

*Richard H. Jackson (Hall, Surovell, Jackson & Colten, on brief), for appellee.*

COCHRAN, J., delivered the opinion of the court.

In this appeal we are concerned with the custody of David Michael Harper (Mike), infant son of Charles Michael Harper and Gail Spencer Harper, now Gail Spencer Riley. By decree entered June 20, 1975, custody of Mike, who was then residing with his father, was awarded to his mother, subject to liberal visitation rights reserved to the father. Harper, who in the same proceeding was granted an *a vinculo* divorce from his wife on the ground of desertion, has appealed the custody ruling.

The Harpers were married in 1968. Mike, their only child, was born the following year. Subsequently, the family purchased a home at Sterling, in Loudoun County. The marriage

deteriorated, and Mrs. Harper left with Mike in May, 1973, and went to Virginia Beach to an apartment maintained by her parents. Harper, finding her there in the company of Ross Riley, a mutual friend whom she has since married, took Mike without her consent, and returned to the family residence, where he and his son have lived ever since. Mrs. Harper moved into a two-bedroom apartment in Reston, about five miles from her husband's home.

Mrs. Harper petitioned the Juvenile and Domestic Relations Court of Loudoun County for custody of her son. By order entered July 20, 1973, pursuant to a report of the Loudoun County Department of Social Services, custody was awarded Harper. After Mrs. Harper had timely appealed this ruling, the Juvenile Court file was delivered to the trial court in August, 1973, but the appeal was never heard. Nevertheless, Mrs. Harper and her husband agreed upon a plan under which Mike visited his mother all day on Saturdays and approximately three hours on Tuesdays and Thursdays.

In September, 1973, Mrs. Harper filed a bill of complaint against Harper in which she sought custody of Mike, and a divorce based on her allegation of constructive desertion. In an amended answer and cross-bill Harper sought dismissal of Mrs. Harper's bill, a divorce on the ground of desertion, and custody of the child. The commissioner in chancery to whom the matter was referred heard evidence and recommended that Harper be awarded a divorce on his amended cross-bill, but left the determination of child custody to the trial court.

After hearing the evidence *ore tenus* the trial court, by letter opinion dated May 19, 1975, stated that both parties were fit and proper persons to have custody, that Harper was an excellent father, who had "performed beyond expectation the role of both father and mother", but that "the rule" enunciated in *Moore* v. *Moore*, 212 Va. 153, 183 S.E.2d 172 (1971), that the best interests of a child of tender years are served by being with his mother, was controlling, and that transfer of custody to the mother should be effected at the conclusion of the school year.

The trial court granted Harper's motion for reconsideration to determine whether the recently decided case of *White* v. *White*, 215 Va. 765, 213 S.E.2d 766 (1975), mandated that custody be awarded to Harper. After argument on the motion the court

reaffirmed its previous decision and entered the decree from which Harper has appealed.

Harper contends that, as he was armed with a valid order of the Juvenile Court awarding him custody of his son, the burden was on his wife to prove that circumstances had so changed that it would be in Mike's best interests to transfer his custody to her. Indeed, where the unchallenged order of a juvenile court remains in effect we have held that the burden is on a parent who seeks to change the custody to show that circumstances have so changed that the best interests of the child require the transfer. *Dyer* v. *Howell,* 212 Va. 453, 456, 184 S.E.2d 789, 792 (1971). But in the present case Mrs. Harper appealed the award of custody made by the Juvenile Court and proceeded to seek custody of Mike in the same trial court in the chancery cause in which she sought a divorce. Under these circumstances, we believe that the only burden on Mrs. Harper, as the moving party, was to show that she was a fit parent and that, since Harper was also fit, other things were equal between them.

In *White* we reaffirmed the principle that the mother is the natural custodian of her infant child and that, when both parents are fit, and other things are equal, she should be awarded custody. In that case, however, the evidence showed that, although both parents were fit, other things were not equal. The mother's home, evaluated on the basis of warmth and stability, rather than material advantages, was not as suitable for the child as was that of the father, to whom we affirmed the award of custody. *See also Burnside* v. *Burnside,* 216 Va. 691, 222 S.E.2d 529 (1976).

The *Moore* "rule", referred to by the trial court, is not a rule of law. Indeed, Code § 31-15 (Repl. Vol. 1973), which provides that a court, in a child custody case, shall give primary consideration to the welfare of the child, expressly states that there shall be no presumption of law in favor of either parent. At most the principle for which *Moore* stands is no more than a permissible and rebuttable inference, that when the mother is fit, and other things are equal, she, as the natural custodian, should have custody of a child of tender years.

Harper insists that the evidence shows that "other things" are not equal in this case. We do not agree.

Harper provided a good home for Mike. The child attended a private school, where he had many friends. Father and son were active in a local church. Harper, as sales representative of a pharmaceutical company, had a flexible schedule that enabled him to spend much time with Mike, and the father's life revolved around his son. Harper introduced evidence as to a definite plan of care for the boy, which included a team effort at breakfast, kindergarten and day care for Mike during the morning and early afternoon, and arrangements for Harper to meet the child again in the late afternoon. Father and son engaged together in a number of activities. Mike is healthy, happy, and well-adjusted in this environment. On the other hand, there was evidence that while on business trips in two instances Harper left the boy with other people.

Mrs. Harper had a two-bedroom apartment, comparable to the one where the Harpers lived prior to the purchase of their home in Sterling. Schools and recreational facilities were nearby. Mike had friends in the neighborhood. Mrs. Harper was not employed, but she received an income from her mother and stepfather which made it unnecessary for her to work. She maintained a neat and clean apartment, which included a bedroom for Mike. There was evidence that she and Ross Riley planned to marry after she was divorced from Harper, that Riley had purchased a three-bedroom house in Reston in anticipation of this marriage, and that he got along well with Mike. Mrs. Harper could devote her entire time to family life.

Each parent testified that the other was a good parent. Harper stated that he had so testified at the 1973 hearing in the Juvenile Court and that his views had not changed. The evidence indicates, to their great credit, that neither has attempted to turn the child against the other. Both love Mike, are conscientious parents, and are deeply interested in their son's welfare. There was evidence of indiscretions on the part of each, but we agree with the finding of the trial court that Harper and Mrs. Harper were fit and proper persons to have custody.

We cannot say as a matter of law that the evidence, based upon the testimony of witnesses heard and evaluated by the trial court, fails to support a finding that other things were equal.

Therefore, we hold that the trial court did not abuse its discretion and commit reversible error in awarding custody to the mother.

*Affirmed.*