## Richmond

### ESTHER VERENA CLARK V. WILLIAM R. CLARK.

April 22, 1977.

Record No. 760468.

Present, All the Justices.

*Winston G. Snider (Clarke, Snider & Carter,* on brief), for appellant.

*Janet B. Burt (Brydges, Hudgins, Ege, Burt & O'Brien,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the court.

By final decree entered March 18, 1976, the trial court granted Esther Verena Clark an absolute divorce from her husband, William R. Clark, on the ground of voluntary separation for more than one year. Mrs. Clark has appealed from the decree insofar as it awarded Clark custody of their infant children, William Coyd Clark, II, then aged five, and Brian Ramon Clark, then aged three, with the right of reasonable visitation reserved to her.

The Clarks separated on or about February 1, 1974, and on February 8, 1974, Mrs. Clark filed her bill of complaint seeking, on the ground of desertion, a divorce from her husband and custody of the children. She subsequently filed an amended bill of complaint for a divorce based upon voluntary separation for more than one year. Under the provisions of a stipulation dated

February 25, 1974, it was agreed, among other things, that Mrs. Clark would have custody of the two children, that she would waive alimony, that she would live in the family residence, that she would pay certain debts, and that Clark would pay $50 per week for child support and discharge various other obligations.

Several months after their separation Mrs. Clark experienced financial difficulties. She and Clark orally agreed that he would assume temporary custody of the children until she overcame her financial problems. Mrs. Clark moved into an apartment which she shared with another young woman, and Clark moved back into the family residence and lived there with the children. Six or eight months later Mrs. Clark requested that the children be returned to her custody, but Clark declined to comply.

By order entered April 22, 1975, the trial court awarded temporary custody of the children to Clark and referred the matter to the Department of Social Services of the City of Virginia Beach "for an investigation and a report of the circumstances" of the parents. After the report had been filed on July 22, 1975, the proceeding was referred to a commissioner in chancery to take evidence and report his findings to the court.

The evidence, taken *ore tenus* before the commissioner in January, 1976, reflected credit upon the Clarks. Each acknowledged that the other loved the children and was a good parent. Mrs. Clark testified that she was financially able to care for the children. Her take home pay as a secretary was $550.88 per month, which exceed her expenses, and she had expectations of an increase in salary. She had been unable to have the children with her overnight, except on one occasion, because of her limited accommodations, but she had arranged, subject to obtaining a change of custody, for a two-bedroom apartment within several blocks of the family residence, in order that the children might continue in the same day care school they were then attending.

Bonnie Brawner, the social worker who made the investigation ordered by the court, testified that she found both the mother and father to be fit and proper parents. She recommended that custody be awarded to Clark because of Mrs. Clark's financial problems and indefinite living arrangements at the time of the investigation. Her recommendation was also based upon the good adjustment made by the children in their father's custody, the stability of the home, and the adverse effect

that might result from removing them from that environment. She conceded that if Mrs. Clark's plans to obtain an apartment near their present home and keep the children in the same school were accomplished "it would not be such a change for them."

There was evidence that Clark's parents were devoted to the children and that the children stayed with them approximately two weekends each month; that Mrs. Clark regularly took them on Sundays to spend the day with her; and that there had been no difficulty in making satisfactory arrangements for her to see them. There was also evidence that Clark prepared his sons' meals, washed their clothes, and spent much of his spare time playing ball and other games with them and reading to them. There was a fenced yard at the residence where the boys could play.

The commissioner in chancery recommended in his report that custody be awarded Clark, and this recommendation was approved by the chancellor. Mrs. Clark contends that this ruling was contrary to the applicable law and the evidence.

The legal guidelines applicable in this case are firmly established. Code § 31-15 (Repl. Vol. 1973) provides that the court, in a child custody case, shall give primary consideration to the welfare of the child and that there shall be no presumption of law in favor of either parent. There is a rebuttable inference, however, that when both parents are fit and other things are equal the mother, as the natural custodian, should be awarded legal custody of an infant of tender years. *Harper* v. *Harper*, 217 Va. 477, 229 S.E.2d 875 (1976). When the mother's home and the father's home are equally suitable for raising the children, we have held that "other things are equal" and that custody should be given to the mother. *Lundeen* v. *Struminger*, 209 Va. 548, 550, 165 S.E.2d 285, 287 (1969). But if the mother's home, evaluated on the basis of warmth and stability, rather than material advantages, is not as suitable as that of the father, then custody should be awarded to the father. *White* v. *White*, 215 Va. 765, 768, 213 S.E.2d 766, 768 (1975). *See Burnside* v. *Burnside*, 216 Va. 691, 222 S.E.2d 529 (1976), where we affirmed the award of custody to the father where there was evidence that the best interests of his infant son would be served by having the child continue to reside with him.

The commissioner was aware of the foregoing guidelines, which he set forth and followed in his report. He found that,

while both Clarks were fit and proper parents, other things were not equal between them because the home in which the children had lived happily with their father for two years was more suitable for them than the present or proposed home of Mrs. Clark. He reported that his determination of suitability was based, not upon physical accommodations or material advantages, but upon the stability of the home environment, the warmth, the associations, and the kind of home life the children could be expected to experience. He found that they were enjoying the dedicated attention of Clark, the companionship of children in the neighborhood, and the affectionate interest of their paternal grandparents. Therefore, he recommended that the boys remain in the custody of their father.

As the evidence was heard *ore tenus* by the commissioner and not by the chancellor, the decree confirming the commissioner's report, while not given the same weight as a jury verdict, is presumed to be correct. *Nash v. Nash,* 200 Va. 890, 898, 108 S.E.2d 350, 355 (1959). The decree cannot be disturbed if it is reasonably supported by substantial, competent, and credible evidence. *See Ashby v. Dumouchelle,* 185 Va. 724, 731-32, 40 S.E.2d 493, 496 (1946).

The record shows that the Clark children are fortunate to have parents who, though divorced, are deeply interested in their welfare. These boys, however, have now resided with their father for approximately three years in the family home where they have spent most, if not all, of their lives. They are doing well in their present environment. After a careful review of the record, we hold that there was substantial, competent, and credible evidence to support the commissioner's finding, approved by the chancellor, that the best interests of these children will be served by awarding their custody to their father.

Accordingly, being of opinion that no error has been shown therein, we will affirm the final decree of the trial court.

*Affirmed.*

CARRICO, J., dissenting.

I dissented in *White* and in *Burnside,* cited in the majority opinion in this case, because, as I said in *Burnside,* my concern was that the majority had abandoned the rule recognized in

*Mullen* v. *Mullen,* 188 Va. 259, 270, 49 S.E.2d 349, 354 (1948), that the mother is the *natural* custodian of her child of tender years. The majority's disposition of the present custody dispute demonstrates that my concern was real and not fanciful.

In both *White* and *Burnside,* the majority could at least point to something in the particular mother's emotional makeup, or in her proposed living arrangements for the child, to justify the conclusion that the child's welfare would be better served by continuing custody in the father. But here, absent even a hint of the unsuitability of the mother or her home, she is denied custody for the sole reason, as expressed in the majority opinion, that the children involved in this case "have now resided with their father for approximately three years" and "are doing well in their present environment." Not on such slim grounds would I deny the mother custody or deprive the children of her unsubstitutable loving care. I would reverse.

I'ANSON, C.J., joins in this dissent.