**CIRCUIT COURT OF HENRICO COUNTY**

Delores A. Wince

v.

Paul M. Wince

April 25, 1978

Case No. 75C753/H-75

BY JUDGE E. BALLARD BAKER

This involves the custody of Tammy Wince, born November 24, 1970, the daughter of Delores Annette (Wince) Racel and Paul Michael Wince.

By Final Decree of September 29, 1975, Delores and Paul were divorced on the one year separation provision. Custody of Tammy was left with Paul, with Delores being given visitation. Matters relating to the child were referred to the Juvenile Court. On May 19, 1976, after hearing, the Juvenile Court ordered that custody remain with Paul, subject to visitation rights. That decision was appealed, and the appeal was heard in this Court on August 9, 1976. On August 13, 1976, after consideration of the evidence and the investigative reports from the Juvenile Court, custody was left with Paul. A transcript of the August 9, 1976, hearing has been filed with the Court in that case, A-869, and is a part of the record in this case.

At the time of the August 1976 hearing, Delores and her husband, Edward Racel, had recently moved to Indiana. He and Delores had married in October 1975. They still reside in Indiana. Paul has remained in Henrico. He had not remarried.

At the time of the custody decision on August 13, 1976, my reasoning in leaving custody with Paul was that Tammy had been in his custody since October 1973; she was well adjusted and in a secure home, ready to enter the first grade; Delores had been recently married and had just moved to Indiana, and I felt some concern over her

stability. It is also true that I felt some concern over the moral aspects of the relationship between Edward Racel and Delores from early 1973 until their marriage in October 1975. She had been unwilling to give up this relationship, even though she knew it would be to her disadvantage in any effort to get custody.

In November 1977, Delores gave notice that she would ask this Court to give her custody of Tammy. On January 10, 1978, the case was heard.

Delores and Edward Racel testified. They remain in Indiana, living in a permanent, formerly mobile home, on twenty-five acres in a rural area, forty miles from Indianapolis. They plan to build on this land. They both work, though Delores plans to stop work if she gets custody. Edward earns around $26,000 per year, and, while he has two teenaged children in Virginia whom he helps support, the income is adequate. They profess to a happy, solid marriage. There has been frequent visitation with Tammy, both in Virginia and in Indiana. Both show a great interest in Tammy.

Based on the evidence, it must be said that the Racel home seems adequate. The marriage is good and there is nothing presently indicating that either is unfit to care for Tammy.

Paul continues to live in Highland Springs with Tammy. He is regularly employed and, while he earns a reasonably adequate income, has begun a small business on a part-time basis in addition to his regular work. Tammy has entered school and is now in the second grade. She goes to a sitter for about three hours after school each day and is then picked up by her father. They generally spend evenings at home or church or visiting friends. There have been some school problems, but they are not shown to be unusual.

Based on the evidence, it must be said that Paul's home seems adequate, he has taken good care of Tammy since he first obtained custody in October 1973, and he is not unfit.

It is apparent that both of these parents love Tammy and each offers a satisfactory home. Neither is unfit, unless Delores's conduct during 1973 to 1975 still marks her as such.

So far as Delores is concerned, the negatives are her relationship with Edward Racel in 1973 to 1975 and the apparent subordination at that time of her interest in Tammy to her interest in Racel. So far as Paul is concerned the negatives are his reliance on baby sitters and the absence of a female mother image in his home.

The major thing in favor of Paul is the fact that he has had custody for over four years and has done well with Tammy. The major thing in favor of Delores is that she is the mother and Tammy is a seven year old girl.

Annotations in 23 A.L.R.3rd 6 and A.L.R.2d 363 relate to such factors as the effect of guilt leading to a divorce and remarriage on the issue of custody. These however are only two of the many things to be considered in determining what is in the best interest of the child. Guilt usually results in custody going to the innocent party, if all other things are equal, on the basis of "a certain interrelationship between marital misconduct and fitness as a parent . . ." 23 A.L.R.3rd 17. But does this mean forever? Remarriage, as a change in condition, is not by itself a sufficient reason for modification, but in connection with other circumstances can justify a modification "depending on whether it would be for the best interest of the child or children in question . . ." 43 A.L.R.2d 365. See also 24 Am. Jur. 2d, *Divorce*, Section 821.

In *McCreery* v. *McCreery*, 218 Va. 352 (1977), the Supreme Court spoke of the "tender years presumption." The Court said this:

> has nothing to do with the respective rights of the two parents. Rather, it has to do with the right of the child. The "presumption" is, in fact, an inference society has drawn that such right is best served when a child of tender years is awarded the custodial care of its mother . . . The courts, acting in the interests of society at large, apply that inference irrespective of the rights of the parents. And that inference controls, unless, in the particular case, it is overcome by evidence that the right of the child will be better served by awarding the child the custodial care of its father.
>
> By definition, the inference controls only when the evidence shows that the mother is fit and "other things" affecting the child's welfare are equal . . . . (218 Va. 354-355.)

At the time of the divorce, Delores made no effort to obtain custody. At that time, September 29, 1975, her relationship with Racel would have been a difficult point to overcome. Since then she and he have married and the marriage appears to be a satisfactory one. At the August 1976 hearing, the marriage was only ten months old and

they had just moved to another state, and those were among the factors considered in denying her request for custody. In my view, the evidence that the Racels have a stable marriage and home situation now is a change in condition sufficient to warrant a consideration of whether it is in the best interest of Tammy to give custody to her mother.

Without consideration of the relationship between Delores and Ed Racel during 1973 to 1975, things between Delores and Paul would be equal, if not tending in her favor, so far as custody of Tammy is concerned. Does the effect of that relationship last forever? *Berrien* v. *Greene County*, 216 Va. 241, 244 (1975), while differing in several material aspects, does indicate that fitness or unfitness at the time of hearing is the test, not at some prior time. See also 24 Am. Jur. 2d, *Divorce*, 823. As the goal is not punishment of the parent but is to determine what is in the best interest of the child, it seems that a lack of judgment, discretion and interest in the past can be overcome. In my view, she has overcome the past as demonstrated by her actions relating to Tammy since the marriage.

In three recent cases the father has prevailed over the mother in custody disputes over children under eight years of age, though each can be distinguished from this case on the facts.

In *McCreery, supra,* the mother's relationship with her employment was held to be such that the father's custodial care was in the best interest of the children. Other evidence also supported the father over the mother. Neither had remarried.

In *Brown* v. *Brown*, 218 Va. 196 (1977), the mother's adulterous relationship was shown to have an adverse impact on the children. The children had been with the father for twenty months, and denial of a transfer of custody was upheld. Neither had remarried, though the mother did plan to marry the man with whom she had been having the relationship, and the father's divorcee friend, whose relationship with him "was never obvious in the presence of the children," stated her plan to marry him when his divorce was final.

In *Clark* v. *Clark*, 217 Va. 924 (1977), the boys had been with the father over two years in the family home, this beginning by agreement as the mother had no place to keep them after separation. The mother's attempt to obtain custody was denied. Both parents were found to be fit, but the home of the father was found to be more suitable that the home of the mother. Neither party had remarried.

*Clark* and *McCreery* were 5 to 2 decisions. In *McCreery*, the Court stated:

> Comparing the quality of care offered by two parents, the courts are guided by histories of past performance and prospects for future performance. If the comparison results in equipose, the inference that the right of the child is best served by awarding the custodial care of the mother controls . . . . (218 Va. 355.)

In the history of past performance Paul prevails. In the prospects for future performance, in my judgment Delores prevails. With Delores, Tammy can grow up with a mother and a step-father, both of whom love her and want her to be with them. With Paul, Tammy grows up with a father who loves her, but with no one in the home to serve as a step-mother. This fact, plus the inference, compel me to the view that custody of Tammy should be with her mother.

As Tammy is presently in the school year, this change of custody should not take place until after the current school year. My suggestion would be July 15.

Paul is to be entitled to reasonable visitation in the future, consistent with that which has been allowed to Delores in the past.