## CIRCUIT COURT OF FREDERICK COUNTY

James D. Shockey, Jr.

v.

Shockey

April 3, 1979

Case No. (Chancery) 5909

BY JUDGE ROBERT K. WOLTZ

This is my letter opinion making determination of the principal issue between the parties to this divorce suit, namely, custody of the two minor children of the marriage, a girl now aged five and one-half and a boy three and one-half.

The evidence was voluminous having been heard ore tenus for all or a portion of six days over a period in excess of three months. Having done considerably more research than in the ordinary case of this type, it was my original intention to write at some length a formal opinion; but in the interest of both parents and perhaps even more so the children themselves, that plan has been abandoned in order to save further delay and bring this matter to a determination.

It is my judgment that the custody of the two children, Hilary T. Shockey and James D. Shockey, III, should be awarded to the complainant, James D. Shockey, Jr. The bases for this judgment are as follows:

The harsh and inflexible common law rule in matters of child custody gave the father, as a matter of absolute right as against all the world, custody of his legitimate infant children, even to exclusion of the mother from any access to them, *Latham v. Latham*, 71 Va. (30 Gratt.) 307, 331 (1878). This exalted paternal rights to the exclusion or denial of maternal and filial rights. This principle has been greatly modified both by the case law and statute.

The most basic principle in child custody cases is stated in *Mullen v. Mullen*, 188 Va. 259, 269 (1948): "[T]he welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate." In support of the proposition, cases as early as 1898 were cited, and the earliest itself cited another several years older. Even the oldest reported case in Virginia concerning the element of custody in a divorce setting, decided in 1872, when the shadow of the overhang of the common law rule was still felt, in reaching its decision mentions "having in view the good of the child." *Carr v. Carr*, 63 Va. (22 Gratt.) 168, 174 (1872). Virtually all if not all cases in our Reports since *Mullen* recognized this principle, sometimes stating it in almost the same language as *Mullen*.

The statutory incursion on the common law is to precisely the same effect. Section 31–15 provides that where parents are separated, whether divorced or not, the court "in awarding the custody of the child to either parent or to some other person shall give primary consideration to the welfare of the child . . ." this provision having been added to the statute in 1930. The second principle is corollary to the first. While as much consideration as possible should be given to the "tender ties of affection" of parents, the rights of neither parent are superior to the rights of the child, *Mullen, supra*, and though the rights of the parents are to be respected, the child's welfare is "regarded more highly than the technical legal rights of the parents." *Forbes v. Haney*, 204 Va. 712 (1963).

The third major principle is expressed statutorily in § 31–15 also, providing that "as between the parents, there shall be no presumption of law in favor of either." *Mullen* takes note of this statutory change, at page 269, as does the most recently reported custody case, *McCreery v. McCreery*, 218 Va. 352, 357 (1977).

A fourth principle, stated in *Mullen* at pages 270 and 271, should be noted as it has had a strong influence in custody cases: "It is now generally recognized that the mother is the natural custodian of her child of tender years, and that if she is a fit and proper person, other things being equal, she should be given the custody in order that the child may receive the attention, care, supervision, and kindly advice, which arise from a mother's love and devotion, for which no substitute has ever been found." (The dissent, four to two in that case, at page 278 asserts the rule had been "that the innocent party upon whose

prayer the divorce is granted, other things being equal, usually will be given the custody of the children.") This principle that the mother is natural guardian of children of tender years was given important recognition in a number of later cases, e.g., *Brooks v. Brooks*, 200 Va. 530 (1959); *Forbes v. Haney, supra; Moore v. Moore*, 212 Va. 153 (1971).

Commencing with *White v. White*, 215 Va. 765 (1975), some controversy developed over the true import of the "rule" that the mother was the natural custodian of children of tender years, the dissent in that case viewing the majority opinion as a departure from *Mullen*. That dissent has continued in three more cases, *Burnside v. Burnside*, 216 Va. 691 (1976), *Clark v. Clark*, 217 Va. 924 (1977), and the most recent on the subject, *McCreery, supra*.

The "tender years" principle as enunciated in *Mullen* contains two important internal, limiting qualifications: the mother is to be a "fit and proper person," and "other things" are to be "equal." The cases which perpetuate the principle of mother as natural custodian such as *Moore, supra*, never failed to state these two limiting qualifications, and *Portwig v. Ryder*, 208 Va. 791 (1968), points out that the rule is a flexible one "not to be applied without regard to surrounding circumstances." *Harper v. Harper*, 217 Va. 477 (1976), points out that the *Mullen-Moore* "rule" is "not a rule of law," but "no more than a permissible and rebuttable inference." *McCreery* states that confusion concerning the "tender years presumption" has arisen due to confusing "the right of a parent to custody of its minor child" with "the right of a child to the custodian care of a parent" and emphasizes that the principle does not relate to the rights of the two parents, but the right of the child and service of the child's best interest.

Whatever else may be said of the cases, from the latest, *McCreery*, back at least as far as *Mullen*, all the cases found themselves on the principle that in determining custody, the welfare of the children involved is preeminent above all other considerations. It is upon this prime rule as applied to the evidence in this case that judgment is based.

I further find the mother not to be unfit, but that "other things" are not equal, and that the complainant father's evidence rebuts the "permissible inference" of the "tender years" principle establishing him as the preferred parent from the standpoint of serving the children's best interests.

None of the cases cited above goes into the question of the *degree* of or the *differences* in the fitness of a child's parents. It is enough that a parent, whether mother or father, be fit, but differences in their degree of fitness can well be construed as one of the "other things" which may deny application of the inference of a mother's superiority to be custodian of a child tender in years.

Viewing the evidence, the father has far greater economic capabilities than the mother, he being well-to-do or even wealthy. But this is a matter of no moment, for were the children awarded to the mother, due provision for ample and sufficient support, maintenance, and education of the children could be awarded out of the father's income and estate. Under the circumstances of this case, the relative economic competence of the parents is of very remote importance.

There is virtually no evidence attacking the fitness of the complainant father to have custody of these children. The evidence shows him to be intelligent, industrious, patient, even-tempered, and with emotional stability. He is shown to be warm and loving toward his children, and on numerous occasions, he has given them the services and care more traditionally thought of as being rendered by a mother. If custody is awarded to him, the children would return to the residence where they have mostly lived during their short lives and which they look upon as home. Undertaking the risk of prognostication, as all courts faced with similar problems must, one can venture, based on past performance of the father, that in his custody and under his moral and social tutelage, the children will grow to be well-adjusted, law-abiding, and productive members of society. The father appears eminently fit as a parent. About the only evidence not positively favorable to the father as a parent was with respect to a stiffness or lack of spontaneous readiness to display his warmth and affection toward the children, but this is far from saying he did not have or did not show such affection.

The children are very dear to the mother, and there is no question she has a strong love for them and they do for her. But there are decided inequalities in "other things" when comparing the mother with the father.

First of all, she has been morally delinquent in committing repeated acts of adultery both before and after the separation of the parties, and evidence discloses continuance of these adulteries in the face of warning that they could materially affect her obtaining or losing custody of

her children. There is no evidence to show that she lived openly in the presence of the children with her paramour as did the mother in *Brown v. Brown*, 218 Va. 196 (1977), which was the deciding factor in award of custody to the father. Nor is there evidence to show that she ever used her home while she was living in it with the children, whether before or after the separation, as a place of assignation with her paramour or that the children have ever witnessed such improper conduct on her part. As to a similar improper relationship where nevertheless the mother obtained custody, *see Moore, supra*, except that in this case there is no whit of evidence the mother and the paramour have any slightest intention of marrying, even though the defendant had been free to do so since rendition of the *a vinculo* decree nearly a month before the final of the six hearings on this case. While this court must unavoidably acknowledge significant changes in sexual mores in recent years, yet a mother's continuing and unabashed even though relatively discreet adultery while married, both before and after separation and while in custody of two small children, as well as after change in their temporary custody, does not seem to the court calculated now or in future to create the environment of wholesomeness and rectitude best suited to the proper upbringing of children.

Another important point of inequality is the emotional and general stability of the two parents. This feature of the father's make-up has already been mentioned. As to the mother, the evidence discloses a fair number of examples of sudden flairs of temper, even of towering rages which under the varying circumstances appeared to have been unreasonable and unreasoning. None of these fits of temper was ever directed against the children, and one even resulted from concern for a child. This trait of character in the mother is likely to be displayed, as once it was, before and adversely affect the children as they progress in years. Associated with this trait is a sometimes intransigent, headstrong will, the two traits being joined together on more than one occasion in unfortunate public exhibition. An undesirable manifestation of this willfulness is the statement, attributed to her, and not denied, to the effect that she did not intend to and would not change her "lifestyle" for any reason. There is likewise evidence not always controverted of vacillation and lack of consistency as to her desire to have custody of these children. At times it seems that she has been willing to walk away from the whole case and her claim to these infants. While this is not entirely singular under the pressures of liti-

gation of this type, it raises the question whether in this case there was sufficient provocation justifying such changes in attitude, and these are yet again examples of an instability on her part. As to the care the children would receive, as divorce has been granted the complainant father on the grounds of adultery, the defendant mother would not be entitled to alimony. Consequently, it is likely she will have to obtain full-time employment to support herself and so the children would be left to the ministrations of babysitters and schoolteachers during the day. Aside from future economic necessity, the defendant even while the children were with her was for some time working two days per week. While the complainant must also work, there is no reason to believe that he cannot obtain as good care for them as the mother could.

The father is awarded custody in furtherance of the principle that the children's welfare is the paramount consideration. A heavy responsibility rests on the court whenever it must make a decision which will sever for one parent or the other the "tender ties of affection," but when this unfortunate necessity arises, neither sentimentality nor sympathy for either parent should alter a course directed to promoting the rights of children to have the more proper award of their custody made.

"The tender nursing period has passed by, and the time for moral training and impressions has arrived . . . ." This statement made in the early case of *Carr v. Carr* cited above concerning award of custody of a three year old seems particularly appropriate to the case at bar. The love and concern of the complainant for his children in combination with his constancy, stability, and example appear to the court to fit him better for this time which has arrived in the life of these children.

The matter of visitation rights of the mother needs to be decided. Neither she nor the children should be denied each other's society. The visitation rights given to the complainant when the defendant had custody of the children and which are the same rights given to the defendant when temporary custody was later awarded the complainant and which are in force at this time might be appropriate. No particular complaint has been made by either party respecting those visitation privileges. If something different is desired, perhaps counsel could agree upon the matter, or, if necessary, the court will hold further hearing. Also to be settled is any claim which defendant may have for her expenses and counsel fee.