### Richmond

KAREN LACKS DURRETTE

V.

GORDON E. DURRETTE

March 12, 1982.

Record No. 802063.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*William F. Burnside* for appellant.
*George C. Rawlings, Jr.,* for appellee.

COMPTON, J., delivered the opinion of the Court.

This is a dispute between parents over the custody of twin boys. The sole question is whether the trial court erred in awarding custody to the father.

Appellee Gordon E. Durrette and appellant Karen Lacks Durrette married in 1974 when they were in their early twenties. The twins were born two years later in October of 1976.

· On December 27, 1979, the mother left the marital abode, located in Spotsylvania County near the City of Fredericksburg. She took her sons and resided temporarily with the maternal grandmother nearby. Within a short time, the mother delivered the boys to their father for weekend visitation. The father refused to return the twins and filed a petition in January of 1980 in the local juvenile and domestic relations district court requesting an award of custody.

The day after the petition was filed, the juvenile court, without a hearing, ordered that the mother be granted temporary custody. Subsequently, after an investigation by the county social services department, the juvenile court ordered in February of 1980 that custody of the twins be awarded to the father with liberal visitation privileges accorded the mother.

Upon appeal of the matter to the circuit court, a further investigation was conducted. In the meantime, the mother had moved to quarters of her own, leasing a trailer home in a rural part of the county. As a result of the investigation, the social worker reported: "From the few contacts that [this] worker has had with both parents, it is impossible to make a recommendation as to the most suitable home for the boys."

The trial court conducted a day-long ore tenus hearing in July of 1980 at which 21 witnesses testified. After counsel filed memoranda of law, the trial judge, in an August letter opinion, ruled in favor of the father, stating:

> "The Court is of the opinion that the twins are in good health and have no developmental or physical problems; that both parents are fit; that both homes are quite suitable for the care of the children; and that 'other things' are equal. The Court, however, is of the opinion that the four year old twin boys are not necessarily children of 'tender years' as defined in the *Mullen* case and as further defined in subsequent opinions. Therefore, the Court finds that the best interest of the children is for the custody to be awarded to the father

with liberal visitation to the mother so that the twins can spend as much time with each as possible."

This decision was incorporated in a September 1980 final order from which we awarded the mother this appeal.

No worthwhile purpose will be served by a detailed recitation of the facts. Both parents presented evidence of their suitability to care for their sons and of their respective abilities to provide a proper environment for them. The fitness of the father was not an issue but he sought to show that she would be an improper custodian.

The record presents a situation in which the parents individually demonstrate love and affection for their children, but each parent questions the sincerity of the other. The husband is pictured by the wife as mainly interested in his work as a truck driver for a parcel service, and in leisure activities. He accuses her of abandoning her duties as a housewife when the twins were about two-and-one-half years of age to become employed at the commissary of a nearby military facility in order to "get away from the children."

There is evidence of constant friction between the mother and the paternal grandmother. Also, the husband sought to prove the wife was romantically involved with another man and that she was prone to immature, erratic behavior. Each claimed the other used vulgar language in the children's presence.

At the time of the hearing, the father was living in the former marital home and there was no evidence it, or the neighborhood, was unsuitable for the boys. The mother was living in the rented trailer home; the father's evidence emphasized the home was located in a remote area, without other small children residing in the vicinity.

In child-custody disputes between parents, the welfare of the child is "the primary, paramount, and controlling consideration of the court," and "[a]ll other matters are subordinate." *Mullen v. Mullen,* 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948).

> "The rights of neither parent take precedence over the rights of the child. The welfare of the child is superior to the wishes and personal desires of either of them. In considering their qualifications and fitness, we must look to their adaptability to the task of caring for the child; their adaptability to

control and direct it; the age, sex, and health of the child; its temporal and moral wellbeing, as well as the environment and circumstances of its proposed home; and the influences likely to be exerted upon the child." *Id.* at 270, 49 S.E.2d at 354.

The *Mullen* court also noted that because the mother was recognized as the "natural custodian of her child of tender years," she should be awarded custody "if she is a fit and proper person" and if "other things" are equal. *Id.* But addressing this so-called "tender years presumption," we held in *Harper v. Harper,* 217 Va. 477, 229 S.E.2d 875 (1976) (after noting Code § 31-15 which provides there shall be no presumption of law in favor of either parent in a child custody case) that the "tender years" maxim "is no more than a permissible and rebuttable inference," not a rule of law. 217 Va. at 479, 229 S.E.2d at 877. *Accord, McCreery v. McCreery,* 218 Va. 352, 354-55, 237 S.E.2d 167, 168 (1977).

The inference is not dispositive, even though the mother may be fit, when "other things" are unequal. Suitability of the parents' respective homes is one of the "other things" to be considered. However, home fitness "is not to be determined merely by comparing physical accommodations or material advantages." *White v. White,* 215 Va. 765, 768, 213 S.E.2d 766, 768 (1975). Rather, "suitability depends, to a great extent, on the warmth and stability of the home environment and the kind of home life which the child can be expected to experience." *Id. Accord, Clark v. Clark,* 217 Va. 924, 926, 234 S.E.2d 266, 268 (1977).

Turning to the present case, we examine, first, the conclusions, both of fact and law, below. A trial court's finding of fact on conflicting evidence heard ore tenus has the weight of a jury verdict, and will be permitted to stand unless plainly wrong or without evidence to support it. *Mundy v. Hesson,* 215 Va. 386, 392, 209 S.E.2d 917, 921 (1974). However, a conclusion which is an opinion based on evidence not in material conflict does not have the same binding weight on appeal. *Clark v. Clark,* 209 Va. 390, 395, 164 S.E.2d 685, 689 (1968).

Here, the trial judge found that the twins were in good health with no emotional or physical problems. Neither parent disputes this finding, and it is fully supported by the evidence. The court also found both parents are fit. There was conflicting evi-

dence as to the mother's fitness, but the finding as to her is supported by credible evidence and will not be disturbed.

■ The court below further decided the twins, who were three years, nine months old at the time of the hearing, were not "necessarily" children of "tender years." As the mother argues, that was an erroneous conclusion. We hold that these children were of "tender years" as a matter of law.

■ In addition, the trial court held that both parents' homes were "quite suitable" and that "other things" were equal. The father assigned cross-error, contending "other things" were unequal as a matter of law.

The mother argues that because the children are of tender years, because she is a fit person to have custody, and because the trial court has found that "other things" are equal, then the inference controls and she should be awarded custody. We disagree with her conclusion. The trial court reached the right result but used some fallacious reasoning.

The evidence was without conflict as to the home environment and the kind of home life the children would experience at the father's residence on the one hand and at the mother's home on the other. The children have been residing in the same surroundings, in a four-bedroom house in a residential subdivision, since December of 1978, except for the brief periods when the parents separated. The house is within a mile of a school.

Examining the comparative daily routines at the respective homes, we find from the record that, effective in February of 1980, the twins have resided with their father from Tuesday to Sunday. The mother has had visitation privileges from Sunday morning to Tuesday morning. From Tuesday to Friday, the father's aunt arrives at his home in the early morning before he leaves for work, and stays with the twins until mid-afternoon, at which time his mother arrives. She remains until after the father returns from work about 5:30 p.m. The uncontradicted evidence shows that during week-day evenings and on Saturdays, the father is attentive to the children, entertaining them, and providing for their health and welfare.

The mother, living in a three-bedroom trailer home about 18 miles from Fredericksburg, works all day at the commissary from Tuesday through Saturday, with portions of either Wednesday or Friday "off." If granted custody, the mother proposes to have the children cared for while she is at work mainly at the home of a

housewife offering babysitting services, who lives 10 miles from the mother's home. When she is not at work, the mother plans to stay at home to care for the children and attend to their needs.

Under the circumstances of this case, we believe that even though the physical characteristics of the respective homes are "suitable" for the children, nevertheless "other things" are unequal. The trial court's conclusion to the contrary was an opinion based on undisputed evidence, and was wrong.

The home environment of the father's abode is more conducive to the well-being of these twins. They have been living in the same house, located in a residential area, for over three years. When the father is at work, the children are cared for in that home; they do not have to be transported a total of 20 miles daily to a babysitter, as would be the case if the mother has custody. The stability provided by the father at this time is greater than can be furnished by the mother, given their respective work schedules, home environments, and arrangements for care of the twins during the parent's absence.

For these reasons, we think the trial judge correctly decided, in the language of *Mullen,* the "primary, paramount, and controlling" issue; he was right in finding that the best interests of the twins will be served by granting custody to the father.

Accordingly, the judgment below will be

*Affirmed.*